UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
   UNITED STATES OF AMERICA,          :

                     Plaintiff,         :
                                               07 Civ. 4651 (SHS)
              -against-            :

WILLIAM WRIGHT, 310 WEST 56th STREET   :
CORPORATION, BAYVIEW LOAN
SERVICING LLC, NEW YORK STATE            :
DEPARTMENT OF TAXATION AND
FINANCE, AMERICAN EXPRESS CENTURION :
BANK, NEW YORK CITY DEPARTMENT OF
FINANCE, and JOHN DOES 1-10,            :

                    Defendants.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**


                                          MICHAEL J. GARCIA
                                          United States Attorney for the
                                          Southern District of New York
                                          Attorney for Plaintiff
                                          86 Chambers Street, 3rd Floor
                                          New York, New York 10007
                                          Tel No. (212) 637-2785
                                          Fax No. (212) 637-2750
                                          E-mail: joseph.pantoja@usdoj.gov



JOSEPH A. PANTOJA
Assistant United States Attorney
- Of Counsel -

Table of Contents

Preliminary Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Point I:         The United States Is Entitled to Have the Tax
                 Assessments Reduced to Judgment Against Wright . . . . . . . . . . . . . . . . . . . . . 6

A.    Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

B.    Statutory Background.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

C.    The Court Should Reduce the Tax
      Assessments to Judgment Against Wright.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Point II:        The United States Is Entitled to Foreclose
                 on its Liens on Wright's Interest in the Apartment. . . . . . . . . . . . . . . . . . . . . . 10

A.    The Tax Liens Are Valid and Perfected Apartment.. . . . . . . . . . . . . . . . . . . . . . . . . . . 10

B.    The Court Should Foreclose the Tax Liens on the Apartment. . . . . . . . . . . . . . . . . . . 12

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## PRELIMINARY STATEMENT

Plaintiff brings this action to reduce to judgment the federal tax liabilities (totaling $401,608.62 as of June 9, 2008) of defendant William Wright ("Wright"), for tax years 1996 through 2005 (the "Subject Tax Years"); and to foreclose on plaintiff's liens on Wright's interest in unit 14A of the co-operative apartment building located at 310 West 56th Street, New York, New York. Because plaintiff has presented evidence as to which there is no material dispute of fact establishing the amount of those liabilities, the Court should grant plaintiff's motion and enter judgment in the amount of $401,608.62, plus statutory additions accruing from June 9, 2008, until Wright's tax liabilities are satisfied. Similarly, as plaintiff has presented evidence as to which there is no material dispute of fact that plaintiff has valid tax liens on Wright's property based on the Internal Revenue Service's ("IRS's") deficiency assessments against Wright for the Subject Tax Years and that those tax liens attached to the Property as of the date of those assessments, the Court should order foreclose on those tax liens and assign all of Wright's interest in the referenced cooperative unit to the plaintiff pursuant to Section 7403 of the Internal Revenue Code, and decree that the tax liens shall be foreclosed by a sale of the property, upon post-judgment motion for an order of sale to be filed by the United States.

## BACKGROUND

Wright is an attorney who practices law in an office located at 250 West 57th Street, Suite 814, New York, NY 10107. *See* Declaration of Carolyn Fields, dated May 30, 2008 ("Fields Decl."), ¶ 20. As indicated in the relevant Certificates of Assessments and Payments ("Forms 4340"), the IRS made assessments against Wright for deficiencies in the payment of his federal income taxes for each of the Subject Tax Years. *See id.* ¶¶ 2-13 and Exs. 1-10 (Forms

4340 for the Subject Tax Years). All of the tax assessments for the Subject Tax Years are based on the income reported by Wright himself on his federal income tax returns for the Subject Tax Years. *Id.* at ¶ 13. The date and amount of those deficiency assessments together with the balances reflecting assessed interest and penalties as indicated on the Forms 4340, are as follows:

| Tax Year | Date of Initial Assessment | Amount of Deficiency Assessment | Assessed Balance |
|---|---|---|---|
| 1996 | 06/02/1997 | $9,564.00 | $10,282.54 |
| 1997 | 06/01/1998 | $10,759.00 | $11,550.44 |
| 1998 | 05/31/1999 | $20,190.00 | $22,765.05 |
| 1999 | 05/29/2000 | $39,495.53 | $41,344.81 |
| 2000 | 05/28/2001 | $32,277.00 | $35,501.28 |
| 2001 | 08/19/2002 | $26,893.00 | $28,830.19 |
| 2002 | 06/02/2003 | $25,851.00 | $27,287.65 |
| 2003 | 05/31/2004 | $21,201.00 | $22,016.02 |
| 2004 | 06/06/2005 | $10,837.00 | $11,292.74 |
| 2005 | 05/22/2006 | $15,576.00 | $16,372.67 |

[1] *See* Fields Decl. ¶ 12.

Notwithstanding that the IRS issued notices of assessment and demands for payment, Wright failed to pay the total amount of his tax liabilities for the Subject Tax Years. *See id.* ¶ 13 and Exh. A at US 2-3, 6-7, 11-12, 15-16, 20-21, 25, 29, 33, 36-37, and 40. Except for involuntary payments, Wright has not made any payments toward his federal tax liabilities since 1991, including his tax liability for the tax years 1996 through 2005. *See id.* ¶ 15; *see, e.g., id.*

---

[1] The "Assessed Balance" figure can be found on the last page of the Form 4340 for each tax year. This figure represents the balance of all assessment and payment transactions that have been posted to Wright's account as of April 19, 2007. However, the figure does not reflect continuing accruals of statutory interest to date, as the IRS does not update its interest assessments on Forms 4340 in excess of the payments made by the taxpayer. As a result, Wright's total current tax liabilities for the tax years in question substantially exceed the balances reported in the Forms 4340, as discussed below. *See* Fields Decl. ¶ 16.

Exh A at US 19 ($500 tax relief withheld) and US 28 ($400 refundable credit). According to IRS records, the IRS has been able to collect a total of only $6,695.07 from all levies to date with respect to Wright's tax liabilities for tax years going back to 1992. *See id.* ¶ 15.

For each of the Subject Tax Years, the IRS timely filed tax liens in New York County, New York (collectively, the "Tax Liens"). *See id.* ¶ 14 and Exh. A at US 2-3, 6-7, 10-11, 15-16, 19-20, 24, 28-29, 32, 36, and 40; *see also id.* Exh. B (copies of liens).

Interest and penalties have continued to accrue to date with respect to Wright's tax liabilities for the Subject Tax Years. Accordingly, the IRS has updated the figures contained in Wright's Forms 4340 to reflect the total balance owed by Wright as of the approximate date of the filing of this motion. The complete accruals of interest, penalties, and other additions on Wright's tax liabilities for the Subject Tax Years (computed as of June 9, 2008) are reflected in the Account Transcripts for tax years 1996 through 2005. Fields Decl. ¶ 16 and Exh. C. The Account Transcripts show that, as of June 9, 2008, Wright's tax liability will be as follows: $24,723.06 for Tax Year 1996; $25,668.10 for Tax Year 1997; $47,103.52 for Tax Year 1998; $79,537.97 for Tax Year 1999; $60,910.78 for Tax Year 2000; $47,364.02 for Tax Year 2001; $42,831.78 for Tax Year 2002; $33,969.44 for Tax Year 2003; $16,695.73 for Tax Year 2004; and $22,804.22 for Tax Year 2005, amounting to a total of $401,608.62. *See id.* Statutory interest and additions will continue to accrue on these amounts until the liabilities are satisfied. *Id.* ¶ 17.

Wright currently resides at 310 West 56th Street, Apartment 14A, New York, New York 10019, a cooperative building corporation. *See* Comp. ¶ 5; *see also* Wright's Ans. ¶ 5. Wright

and his spouse or former spouse, Marilyn Wright, jointly purchased Apartment 14A on or about June 10, 1982, for $100,000. *See* Comp. ¶ 26; *see also* Wright's Ans. ¶ 26; Declaration of Joseph A. Pantoja ("Pantoja Decl.") Exh. A.  Wright is currently the sole owner of 181 shares of stock in defendant 310 West 56th Street Corporation ("310 Corporation").  *See* Comp. ¶ 27; *see also* Wright Ans. ¶ 27; 310 Corporation Ans. ¶ 2; Pantoja Decl. Exhs. D and G.  The 181 shares assigned to the Apartment represent an interest in 310 Corporation and specifically Apartment 14A, to which Wright also holds a proprietary lease (all of Wright's rights, title, and interest in 310 Corporation and the apartment to which he holds a lease shall be referred to collectively as the "Apartment").  *See* Comp. ¶ 5; *see also* Wright's Ans. ¶ 5; 310 Corporation's Ans. ¶ 2; Pantoja Decl. Exh. H  (copy of Proprietary Lease (hereinafter, "Lease")).  The fair market value of the Apartment was $650,000 as of March, 2007.  *See* Fields Decl. ¶ 19.  In his 2004 and 2005 federal tax returns, Wright filed as "head of household," listing two minors as dependents.  *See* Fields Decl. ¶ 18.

Defendant Bayview Loan Servicing LLC ("Bayview") holds a mortgage on the Apartment.  *See* Comp. ¶ 7; *see also* Bayview's Answer at ¶ 7; Wright's Ans. ¶ 7.  Wright's purchase of the Apartment was originally financed through Empire of America Federal Savings Bank ("Empire"), and Wright pledged his shares in 310 Corporation as security for the loan.  *See* Pantoja Decl. Exh. E.  Under the Lease, Wright was permitted to assign his shares in the Apartment "as security for a loan made to the Lessee by a bank . . . or other recognized lending institution." *See* Lease at 9, ¶ 17.  Bayview appears to be Empire's successor-in-interest with

4

respect to the original Empire loan to Wright, the principal balance of which was approximately $55,000 as of May, 2007.  *See* Pantoja Decl. ¶¶ 7 and 10 and Exhs. F and I.[2]

The plaintiff commenced this action on June 1, 2007, seeking to reduce its tax assessments to judgment against Wright and to foreclose on the Tax Liens on the Apartment.[3] *See* Pantoja Decl. Exh. J (docket sheet) at 3.  Wright, an attorney proceeding *pro se*, answered the complaint on August 29, 2007.  *See id.* at 4.  Bayview answered the complaint on September 12, 2007.  *Id.*  310 Corporation answered the complaint on September 14, 2007.  *Id.*  Named defendants New York State Department of Taxation and Finance, New York City Department of Finance, and American Express Centurian Bank waived formal service of the complaint but did not answer or move with respect to the complaint or otherwise appear in this action.  *Id.* at 4-5.

---

[2] The extent and relative priority of the parties' security interests in the Apartment are beyond the scope of the instant motion; as discussed in Point II.B, *infra*, these issues will be addressed in any subsequent foreclosure by a sale of the property, upon post-judgment motion for an order of sale to be filed by the United States.

[3] This action is timely as to all ten of the tax assessments at issue.  Because the United States brings this action under various provisions of the Internal Revenue Code, it is bound by the statute of limitations found in the Code, which provides that the United States must commence a tax collection proceeding "within 10 years after the assessment of the tax."  26 U.S.C. § 6502 (a)(1); *United States v. Werner*, 857 F. Supp. 286, 289 (S.D.N.Y. 1994); *United States v. Alfano*, 34 F. Supp. 2d 827, 835-36 (E.D.N.Y. 1999).  This action was commenced on June 1, 2007, and all of the tax assessments at issue were made within the ten year period preceding June 1, 2007 (*i.e.*, on or after June 2, 1997).  *See* Fields Decl., ¶¶ 2-13.

ARGUMENT

POINT I

**THE UNITED STATES IS ENTITLED TO HAVE ITS TAX ASSESSMENTS REDUCED TO JUDGMENT AGAINST WRIGHT**

A.  **Summary Judgment Standard**

Summary judgment should be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c). When a properly supported motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) (holding that summary judgment serves "to isolate and dispose of factually unsupported claims"). Although Wright is proceeding *pro se*, his "*pro se* status does not allow him to rely on conclusory allegations or unsubstantiated speculation to overcome a motion for summary judgment." *Washington v. Commissioner*, No. 03 Civ. 4638 (SAS), 2004 WL 2601136, at *1 n.20 (S.D.N.Y. Nov. 16, 2004) (citation omitted).

The Supreme Court has held that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (1986) (quoting Fed. R. Civ. P. 1). Accordingly, courts frequently have found summary judgment appropriate in favor of the Government in suits, like the instant one, seeking to reduce tax assessments to judgment. *See, e.g., United States v. Prince*, 348 F.2d 746 (2d Cir. 1965); *United States v. Letscher*, 83 F. Supp. 2d 367 (S.D.N.Y.

1999); *United States v. Werner*, 857 F. Supp. 286 (S.D.N.Y. 1994); *United States v. Barretto*, 708 F. Supp. 577 (S.D.N.Y. 1989).

**B.     Statutory Background**

Under 26 U.S.C. § 7402(a), once a taxpayer has been assessed liability by the IRS, the Government may proceed in district court to reduce the assessments to judgment. *See* 26 U.S.C. § 7402(a); *see also United States v. Rodgers*, 461 U.S. 677, 682 (1983). Federal tax assessments create a *prima facie* case of liability, such that the Government "is entitled to have the assessment reduced to judgment unless the taxpayer overcomes the presumption by the IRS that the assessment is correct." *Chariot Plastics, Inc. v. United States*, 28 F. Supp. 2d 874, 881 (S.D.N.Y. 1998) (citing, *inter alia*, *Rodgers*, 461 U.S. at 682 and *DeLorenzo v. United States*, 555 F.2d 27, 29 (2d Cir. 1977)); *United States v. Mauro*, 243 F. Supp. 413, 415 (S.D.N.Y. 1965) ("The assessment is prima facie evidence of defendant's liability. . . . The burden is therefore on the taxpayer in the first instance to disprove the computations made by the Commissioner.") (internal quotation marks and citations omitted). Indeed, courts in this district have held that because the IRS' assessments are presumed valid, "summary judgment may be granted even though none of the facts underlying the assessment of a federal tax is specifically presented to the Court." *Barretto*, 708 F. Supp. at 579; *Mauro*, 243 F. Supp. at 415. Even where, as here, the Government sues as the plaintiff, the taxpayer nevertheless bears the burden of proof to show that he is not liable for the assessments made against him. *See DeLorenzo*, 555 F.2d at 29 (holding that the burden of "proving not merely that the Commissioner's calculation is erroneous but also the amount he is entitled to recover . . . remains with the taxpayer even though a civil collection suit is brought by the Government") (citing, *inter alia*, *United States v. Janis*, 428 U.S. 433, 440 (1976)).

### C. The Court Should Reduce the Tax Assessments to Judgment Against Wright

The Certificates of Assessments and Payments, known as Forms 4340, submitted by the IRS in support of the instant motion and annexed to the Fields Declaration as Exhibits 1-10, are presumptive proof that valid assessments were made for each of the Subject Tax Years. *See, e.g.*, *United States v. Lorson Electric Company, Inc.*, 480 F.2d 554, 555 (2d Cir. 1973) (holding representations in a Certificate of Assessment to be "presumptively correct")[4] (citations omitted); *Environmental Defense Fund v. United States*, No. 91 Civ. 7232 (MGC), 1997 WL 289412 at *4 (S.D.N.Y. June 2, 1997) ("Certificates of Assessments and Payments are entitled to a presumption of correctness, and the taxpayer has the burden of overcoming this presumption and proving that the assessments are erroneous."); *United States v. DiGiulio*, No. 95-CV-219S, 1997 WL 834820, at *4 (W.D.N.Y. Nov. 5, 1997) ("A Certificate of Assessments and Payments is sufficient evidence that assessments have been made in the manner proscribed by 26 U.S.C. § 6202 and the appropriate regulations."). Likewise, the IRS' calculations updating the amount of Wright's total liabilities for the Subject Tax Years – as reflected in the Fields Declaration and the Integrated Data Retrieval System printouts and Account Transcripts attached to it – are also entitled to a "presumption of correctness." *United States v. Mazzara*, 530 F. Supp. 1380, 1382 (D.N.J. 1982), *aff'd* 722 F.2d 736 (3d Cir. 1983) ("[A]n affidavit, signed by an officer of the [IRS], which details [a taxpayer's] total tax liability, including interest and penalties . . . is entitled to a presumption of correctness.") (citations omitted); *Sequa Corp. & Affiliates v. United*

---

[4] *Lorson* refers to "Form 899 Certificates of Assessment." *Id.* Form 4340 is the successor to Form 899. *See Stahl v. United States*, No. 91 CV 77166-DT, 1992 WL 345088, at *3 n.3 (E.D. Mich. Aug. 31, 1992).

*States*, 350 F. Supp. 2d 447, 449 (S.D.N.Y. 2004) ("It is well-established that the findings of the Commissioner in tax matters are presumed correct . . . .").

Accordingly, Wright bears the burden of overcoming the presumption accorded to the IRS by affirmatively demonstrating that the IRS' assessments and calculations are incorrect. *See Environmental Defense Fund*, 1997 WL 289412, at *4 ("Certificates of Assessments and Payments are entitled to a presumption of correctness, and the taxpayer has the burden of overcoming this presumption and proving that the assessments are erroneous.") (citations omitted); *see also United States v. Lavi*, No. 02-CV-6299 (SLT) (JMA), 2004 WL 2482323, at *4 (E.D.N.Y. Sept. 13, 2004) (affording a Form 4340 "the requisite presumption of correctness" and placing on defendant the "burden of establishing that [the IRS'] calculations are erroneous"). To defeat the Government's motion for summary judgment, Wright "must not only show that the assessment is incorrect, but . . . must also prove the correct amount of the tax." *Chariot Plastics, Inc.*, 28 F. Supp. 2d at 882 (citing *Janis*, 428 U.S. at 440-41). Where (as here) the Government places the assessment and the amount due thereon into evidence, it is entitled to summary judgment unless Wright raises a material issue of fact. *See Barretto*, 708 F. Supp. at 579; *Mauro*, 243 F. Supp. at 415.

There is no material issue in dispute that could preclude entry of judgment for the Government. The Fields Declaration establishes that (as of June 9, 2008) Wright owes a total of $401,608.62 in unpaid taxes (based on amounts reported by Wright himself), interest, and penalties for the Subject Tax Years, with statutory additions continuing to accrue thereafter until the obligations are paid. *See* Fields Decl. ¶¶ 2-17.

POINT II

THE UNITED STATES IS ENTITLED TO FORECLOSE
ON ITS LIENS ON WRIGHT'S INTEREST IN THE PROPERTY

A.   The Tax Liens Are Valid and Perfected

A federal tax lien is not self-executing; one way to enforce a tax lien, as employed by the Government here, is the lien-foreclosure suit pursuant to 26 U.S.C. § 7403. *See Nat'l Bank of Commerce*, 472 U.S. at 720. In order to determine the nature of a delinquent taxpayer's interest in property, federal courts look to the law of the state where the property is located. *See id.* at 722 ("[I]n the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property.") (internal citation omitted); *United States v. McCombs*, 30 F.3d 310, 323 (2d Cir. 1994) (" 'federal . . . courts must look to state law' to ascertain whether a taxpayer has a property interest in property subject to a federal tax lien.") (quoting *Aquilino v. United States*, 363 U.S. 509, 512-13 (1960)). By using the broad language "all property and rights to property" [in 26 U.S.C. § 6321] . . . "Congress meant to reach every interest in property that a taxpayer might have." *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719-20 (1985). "[O]nce it has been determined that state law creates sufficient interests in the [taxpayer] to satisfy the requirements of [the statute], state law is inoperative, and the tax consequences thenceforth are dictated by federal law." *Id.* at 722.

In this case, Wright cannot dispute that his interest in the Property is a cognizable property interest under New York law. *See* Wright Ans. ¶ 5. Under New York law, a taxpayer's interest in the stock certificate of the cooperative apartment and the proprietary interest granted by the corporation is classified as personal property. *See State Tax Commission v. Shor*, 43 N.Y.2d 151, 154-55 (1977). Federal tax liens arose and attached to all of Wright's property,

including his interest in the Property, as of the date of the IRS' federal income tax assessments against him.  Section 6321 of the Internal Revenue Code provides that "if any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including interest . . . or assessable penalty . . .) shall be a lien in favor of the United States upon all property and rights to property whether real or personal, belonging to such person."  26 U.S.C. § 6321.  Section 6322 of the Code further provides that, unless another date is set by law, the lien imposed "shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed . . . is satisfied or becomes unenforceable."  26 U.S.C. § 6322; *McCombs*, 30 F.3d at 321 ("A lien imposed pursuant to section 6321 . . . is deemed to arise at the time the assessment is made . . ."); *see also United States v. Craft*, 535 U.S. 274, 277 (2002); *Drye v. United States*, 528 U.S. 49, 56 (1999).

  Here, there can be no dispute that after Wright failed to pay the IRS' valid tax assessments against him (*see* Fields Decl., ¶¶ 2-17 and Exhs. A and B), federal tax liens arose and attached to all of Wright's "property and rights to property," 26 U.S.C. § 6321, and those liens attached "at the time the assessment[s were] . . . made . . ." 26 U.S.C.  § 6322.  Thus, the Court should find that tax liens based on the IRS' deficiency assessments against Wright for the Subject Tax Years arose and attached to the Property as of the date of those assessments.

    Section 6323(a) of the Internal Revenue Code provides that "[t]he lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary."  26 U.S.C. § 6323(a).  As required by Section 6323(f) of the Internal Revenue Code, during the period 1999-2006, the Government filed tax

liens corresponding to each of the Subject Tax Years in New York County, New York. *See* Fields Decl. ¶ 14 and Exh. C.[5]

**B.    The Court Should Foreclose the Tax Liens on the Apartment**

Pursuant to Section 7403 of the Internal Revenue Code, the Court may decree a sale of the Property and distribute the proceeds in respect to the interests of the parties and the Government. *See* 26 U.S.C. § 7403; *see also United States v. Rodgers*, 461 U.S. 677, 708-09 (1983) ("A § 7403 proceeding is by its nature a proceeding in equity, and judicial sales in general have traditionally been accompanied by at least a limited degree of judicial discretion."). Plaintiff requests that the Tax Liens be foreclosed by a sale of the property, upon post-judgment motion for an order of sale to be filed by the United States, which will address the terms of an eventual sale of the Apartment and distribution of the proceeds in respect to the interests of the parties and the plaintiff and any other secured parties.

Equitable considerations weigh heavily in favor of prompt foreclosure of the Tax Liens on the Apartment so that the Apartment can be sold to satisfy Wright's federal tax liability. *See Rodgers*, 461 U.S. at 709 ("We can think of virtually no circumstances, for example, in which it would be permissible to refuse to authorize a sale simply to protect the interests of the delinquent taxpayer himself or herself."). Wright's tax delinquency is egregious. For each of the ten tax years underlying the tax liability in this case, Wright – an attorney – consistently filed his federal

---

[5] Where there are competing liens on a property, priority depends upon which of the liens attached to the property and became choate first. *See generally United States v. City of New Britain*, 347 U.S. 81 (1954) (discussing universal principle of law, "first in time, first in right"). Plaintiff acknowledges that defendant Bayview's lien with respect to the original mortgage on the Apartment has priority over the Tax Liens at issue pursuant to Section 6323(c) of the Internal Revenue Code. *See* 26 U.S.C. § 6323(c). The principal balance due on that mortgage was approximately $53,000.00 as of May, 2007. *See* Pantoja Decl. Ex. I. The Government will provide for payment of Bayview in any post-judgment application to sell the Apartment.

personal income tax returns without paying anything toward his federal tax liabilities. The IRS made numerous attempts to contact Wright to secure payment of the tax due but to no avail. Except for involuntary payments obtained through levies, Wright has not made any payments toward his federal tax liabilities since 1991, including his liability for Subject Tax Years. Indeed, foreclosure is necessary because the IRS was only able to collect a total of $6,695.07 from all levies to date. Wright also had many years to pay his tax debt by selling his interest in the Apartment or otherwise but failed to do so, which necessitated the instant suit. Indeed, as the parties disclosed to the Court during status conferences in this matter, the Government tried to persuade Wright to sell his interest in the Apartment at or near market rates. At the status conference held on March 7, 2008, Wright acknowledged having received an offer of $690,000 from a prospective buyer, considerably higher than the IRS's $650,000 estimate for the value of the Apartment, yet, inexplicably, the Apartment remains unsold. Under these circumstances, the equities overwhelmingly weigh in favor of foreclosure. *See Rodgers*, 461 U.S. at 709.

For the forgoing reasons, the United States request that this Court enter a judgment decreeing that the Tax Liens against Wright attach to the Apartment, and that the Tax Liens shall be foreclosed by a sale of the property, upon post-judgment motion for an order of sale to be filed by the United States. *Id.* at 711 ("We do emphasize, however, that the limited discretion accorded by § 7403 should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes.").

### Conclusion

For the reasons above, this Court should grant the Government's motion for summary judgment and (1) enter judgment in the amount of $401,608.62, with interest and additions

accruing thereon as of June 9, 2008, according to law until the judgment is satisfied; (2) foreclose the Tax Liens on the Apartment; and (3) decree that the Tax Liens shall be foreclosed by a sale of the property, upon post-judgment motion for an order of sale to be filed by the United States.

Dated: New York, New York
       May 30, 2008

>                    MICHAEL J. GARCIA
>                    United States Attorney for the
>                    Southern District of New York,
>                    Attorney for Plaintiff
>
> By:   /s/ Joseph A. Pantoja
>       JOSEPH A. PANTOJA
>       Assistant United States Attorney
>       86 Chambers Street, 3rd Floor
>       New York, New York 10007
>       Telephone: (212) 637-2785
>       Facsimile: (212) 637-2750