# EXHIBIT A

CONTRACT OF SALE—COOPERATIVE

19 9?

# Agreement made as of the 15th day of June

between

RICHARD HERZ

residing at 500 East 77th Street, New York City, N.Y. 10021.

hereinafter called "S

and

William R. Wright and Marilyn A. Wright, his wife

residing at 6 Bonnie Lane, Towaco, New Jersey 07082

hereinafter called "Purc

WITNESSETH:                                   181

1. Seller agrees to sell and transfer and Purchaser agrees to buy (i)

**SHARES** (the "Shares") of 310 West 56th Street Corporation,

(the "Corporation") allocated to Apartment 14 A (the "Apartment") in the co apartment building located at 310 West 56th Street, New York City, N.Y.

and (ii) the Seller's interest, as tenant, in the proprietary lease, as amended (the "Le the Apartment, which Lease is appurtenant to the Shares.

**LEASE**

**PERSONAL PROPERTY**

2. (a) Subject to the rights of the landlord under the Lease and any holder of a mortgage to which the Lease is subordinate, this sale includes all of the Seller's right, title and interest,

*Strike out inapplicable items*

if any, in and to:

(i) the refrigerators, ranges, dishwashers, kitchen cabinets and counters, lighting and plumbing fixtures, air-conditioning equipment and other fixtures and articles of property attached to or appurtenant to the Apartment, except those listed in subparagraph (b) of this Paragraph 2;

(ii) None

(b) Excluded from this sale are:
(i) furniture and furnishings, and
(ii)

The property referred to in Paragraph 2(a)(i) and 2(a)(ii) may not be purchased if title to the Shares and the Lease is not closed hereunder.

**PRICE**

3. The purchase price is $100,000 *
payable as follows: $ 5,000.00
by check, subject to collection, on the execution and delivery of this agreement; $ 95,000.00 in cash, cashier's check or by unendorsed certified check of Purchaser drawn on a local bank or trust company, to the order of Seller, to be delivered at the closing.

**WARRANTIES**

4. Seller represents, warrants a that: a) Seller is the sole owner the Lease and the property refer graph 2(a)(ii); the same are and will at closin clear of liens, encumbrances and adverse intere the matters, if any, affecting the title to the re which the Apartment is a part; and Seller has and power to sell and transfer the same; (b) th duly issued and fully paid for and are non-asse maintenance (rent) payable on the date hereof of $ 630.00 a month and at the will be fully paid to said date; (d) Seller has written notice of any intended assessment or maintenance (rent) not reflected in the figure paragraph (c); (e) the Lease is and will at c force and effect; (f) Seller is not and will not for labor or material which might give rise notice of mechanic's lien against the buildi Apartment is located; (g) there are and will violations of record which the tenant woul remedy under the terms of the Lease; (h) Sell or a nominee of a Sponsor under any pl organization affecting this Apartment.

The representations and warranties conta graph 4 and in Paragraph 14 shall survive action based thereon must be instituted wi the date of closing.

**NO OTHER REPRESENTATIONS**

5. Purchaser has examined the certificate of incorpora the Corporation and the f has waived the examinatic has inspected the Apartment, its fixtures, ment and the personal property, if any, and knows the condition thereof, and agr "as is", i.e., in the condition they are i subject to normal wear and tear. Purch waived examination of the last audited the Corporation, and has considered or all other matters pertaining to this agr chase to be made hereunder, and does sentations made by any broker or by Se purporting to act on behalf of Seller a might influence or affect the decision tc or to buy the Shares, the Lease, or said those representations and warranties forth in this agreement.

**REQUIRED APPROVAL**

6. This sale is subject to the approval of the directors or shareholders of the Corporation as provided in the Lease or the corporate by-laws. Purchaser agrees to submit to Seller or to the Corporation's managing agent, within five (5) days after the execution and delivery hereof the names and addresses of persons to whom, or banks or corporations to which,

**REFERENCES** reference may be had as to Purchaser's character and financial standing, and thereafter to attend [and to cause Purchaser's spouse to attend] one or more personal interviews, as requested by the Corporation, and submit to the Corporation or its managing agent such further references and information as are commonly asked for in such transactions. If any of the aforementioned references are submitted to Seller, Seller shall promptly redeliver same to the Corporation or its managing agent. Seller may, but shall not be required to, take any steps in connection with the procurement of such approval. Seller shall promptly notify Purchaser of such approval or of the refusal thereof upon receipt of notice thereof. In the event of such refusal, this agreement shall thereby be deemed cancelled. If approval or refusal be not received by Seller or Purchaser at or before the closing, either may by notice given to the other on or before the date fixed in paragraph 10 for the closing, adjourn the closing for a period not to exceed thirty (30) days for the purpose of obtaining such approval, and if the party who has adjourned the closing is unable to obtain approval of this sale within said period of time, this agreement shall ipso facto be deemed cancelled. If this agreement is cancelled as provided in this Paragraph, all sums theretofore paid to Seller by Purchaser on account of the purchase price shall be returned without interest to Purchaser and both parties shall be relieved from all further liability hereunder.

**SALE AFTER APPROVAL; ASSUMPTION**

7. If approval of this sale be granted, Seller agrees to transfer and assign to Purchaser the Lease, the Shares and the personal property, as in this agreement provided, and Purchaser agrees to pay the purchase price and to assume, with respect to obligations arising from and after the time of the closing, all of the terms, covenants and conditions of the Lease on the part of the lessee thereunder to be performed, and to be bound by the by-laws of the Corporation and the rules and regulations, if any, from time to time promulgated by the Corporation. To that end Purchaser shall execute and deliver to the Corporation at the closing an agreement containing such assumptions in the form requested or approved by the Corporation, and, if requested by the Corporation, a new proprietary lease for the balance of the lease term shall be executed by Purchaser and the Corporation and the Lease being assigned by Seller shall be surrendered for cancellation.

**REMOVAL OF SELLER'S PROPERTY**

8. Seller shall, prior to the closing, remove from the Apartment all the household furniture, furnishing and other personal property not included in this sale, and shall repair any damage caused by such removal, and shall deliver possession of the Apartment at the closing, broom-clean.

**RISK OF LOSS, ETC.**

9. (a) The risk of loss or damage to the Apartment, or to the property included in this sale in accordance with Paragraph 2, by fire or other cause, until the time of the closing, is assumed by Seller, but without any obligation on the part of Seller, except at Seller's option, to repair or replace any such loss or damage. Seller shall notify Purchaser of the occurrence of any such loss or damage within five (5) days after such occurrence or by the date of closing, whichever first occurs, and by such notice shall elect whether or not Seller will repair or replace the loss or damage and if Seller elects to do so, that he will complete the same within the sixty (60) day period hereinafter referred to. If Seller elects to make such repairs and/or replacements, then Seller's said notice shall set forth an adjourned date for the closing, which shall be not more than sixty (60) days after the date of the giving of Seller's notice. If Seller does not elect to make such repairs and/or replacements, or if Seller elects to make them and fails to complete the same on or before said adjourned closing date, Purchaser shall have the following options:

(i) to declare this agreement cancelled and receive a refund, without interest, from Seller of all sums theretofore paid on account of the purchase price; or

(ii) to complete the purchase in accordance with this agreement without reduction in the purchase price except as provided in the next sentence. If Seller carries hazard insurance covering such loss or damage, Seller shall turn over to Purchaser at the closing the net proceeds (after legal and other expenses of collection) actually collected by Seller under the provisions such hazard insurance policies to the extent that they a attributable to loss of or damage to any property included this sale; if Seller has not received such proceeds Seller sh assign (without recourse to Seller) Seller's right to any pa ment or additional payments from Seller's said insurance whi are attributable to the loss of or damage to any property i cluded in this sale, less any sums theretofore expended by hi

(b) If Seller does not elect to make such repairs and/ replacements, Purchaser may exercise the resulting option und (i) or (ii) of (a) only by notice given to Seller within five (. business days after Purchaser's option arises. If Seller elects make such repairs and/or replacements and fails to complete tl same on or before the adjourned closing date, Purchaser m exercise the resulting options within five (5) business days aft the adjourned closing date.

10. The closing documents referred to in Paragraph 11 sh; be delivered, and payment of the balance of the purchase pri shall be made, at the closing to be held on July 30, 19 82 at 2:30 P.M., at the office of

*Charles H. Greenthal & Co. Inc.,*
*18 East 48th Street,*
*New York City, N.Y. 10017.*

**CLOSING DOCUMENTS**

11. At the closing: (a) Seller shall deliver t Purchaser:

(i) Seller's certificate for the Shares, duly e1 dorsed for transfer, or accompanied by a sep: rate duly executed stock power, with necessary stock transf( stamps attached and in either case, with any guarantee ( Seller's signature required by the Corporation;

(ii) Seller's duplicate original of the Lease and a duly execute assignment thereof to the Purchaser in the form requested c approved by the Corporation;

(iii) Certificate of the secretary of the Corporation or othe evidence of the consent of the Corporation or its directors to th transfer of the Shares and Lease to Purchaser in accordanc with the applicable provisions of the Lease or the corporat by-laws;

(iv) If requested, a statement by the managing agent that th maintenance and any special assessments then due and payabl to the Corporation have been paid to the date of the closing;

(v) If requested, a bill of sale in customary form transferrin the property referred to in Paragraph 2(a);

(vi) Keys to the outer doors of the Apartment.

(b) Purchaser shall deliver to Seller and the Corporatior together with the payment of the balance of the purchase price the duly executed agreements and/or new lease referred to i1 Paragraph 7 hereof.

*Purchaser*

**PROCESSING FEE**

12. (a) ~~Seller~~ shall, at the closing, pay th processing fee, if any, charged by the managing agent for its services in connection with th approval of this sale and the transfer of the Shares and th Lease and the legal fee*of the Corporation's attorney, if any in connection with such transfer. Purchaser shall pay (i) th sales and transfer taxes, if any, on this sale, other than th transfer stamps provided for in Paragraph 11 (a)(i) and (ii) th cost of title search if required by the Corpora-

**APPORTIONMENTS** tion. (b) The parties shall at the closing appor tion, as of midnight of the day preceding the date of actual closing, the rent under the Lease, and utility charges, if any, due the Corporation. Assessments will not be apportioned but will be payable by the party who is the Owner ... ... ... ... ... ... ... ... ... ... ... ... ...

*provided, however, that Seller shall pay su fees to the extent in excess of $500.00 in the aggregate.*

**PRIOR LEASE TERMINATION**

13. If prior to the closing the Corporation shall elect to cancel and terminate the Lease under any option or privilege reserved therein for any reason except Seller's default, this agreement shall thereupon become a nullity and Seller shall be deemed to be unable to convey the Lease and the Shares and Seller shall refund to Purchaser, without interest, all sums theretofore paid on account of the purchase price.

14. Purchaser represents to Seller that Purchaser has not dealt with any brokers in connection with this transaction xxxxxxxx

~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~
~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~
~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~
~~xxxxxxxxxxxxxxxx.~~

**DEFAULTS, REMEDIES**
15. If Purchaser defaults hereunder, Seller's sole remedy shall be to retain as liquidated damages the down payment mentioned in Paragraph 3, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the down payment constitutes a fair and reasonable amount of damages in the circumstances. If Seller willfully defaults, Purchaser shall have such remedies as he is entitled to at law or in equity, including but not limited to specific performance because the Apartment and possession thereof cannot be duplicated.

**ENTIRE AGREEMENT**
16. All representations, understandings and agreements had between the parties with respect to the subject matter of this agreement are merged in this agreement which alone fully and completely expresses their agreement.

**NO ASSIGNMENT BY PURCHASER**
17. This agreement cannot be changed, discharged or terminated orally. Purchaser may not assign this agreement or any of his rights hereunder.

**SELLER'S EXCULPATION**
18. Notwithstanding any contr[ary provision of] this agreement, express or imp[lied, or any] trary rule of law or custom, i[f Seller is] unable to transfer the Lease a[nd Shares in] accordance with this agreement and any condit[ions,] the sole obligation and liability of Seller shall [be to refund to] Purchaser, without interest, all sums theretofor[e paid on account] of the purchase price, and upon the making of [such refund this] agreement shall be deemed cancelled and shall [be deemed to] terminate, and neither party shall have any [further claim] against the other by reason of this agreement. [Nothing] contained in this paragraph shall be construed [to relieve Seller] from liability due to a misrepresentation or wil[lful default.]

**NOTICES**
19. All notices or demands [which] must or may be given or made [shall] be in writing and sent by certifie[d] mail, return receipt requested, to the address a[bove set forth] for the party to whom the Notice is given, or [to such other] address for such party as said party shall here[after designate] by Notice given to the other party pursuant to t[his paragraph.] Each Notice shall be deemed given on the next [business day] following the date of mailing the same.

**MARGIN HEADINGS**
20. The margin headings are inte[nded for] convenience in finding the subject [matter and do] not constitute part of the text of t[his agreement] and shall not be considered in the i[nterpretation] of this agreement or any of its provisions.

**Note:** Either strike this paragraph because there is no financing condition to the transaction or complete the paragraph as required.

**FINANCING CONDITION**
21. A. The obligations of Purchaser hereunder are subject:
(a) to the issuance of a commitment letter by [a savings] ings bank, savings and loan association or insurance company doing business in the State of New Y[ork to Pur]chaser, on or before    July 16,    , 19 82    (a copy of which letter shall be furnished to Sel[ler within   days] after receipt thereof), pursuant to which the institution agrees to lend not less than $30,000 [at a rate] of interest not to exceed  16  % per annum, for a term of at least  3  years* solely upon the se[curity of a] pledge, security interest or assignment of, and/or mortgage on, the Shares and the Lease, in order to [enable Pur]chaser to consummate the transaction provided herein;

(b) to the consent of the Corporation to the loan if such consent is required by the terms of the L[ease or the] by-laws of the Corporation and to the execution by the Corporation of an agreement, in form an[d substance] satisfactory to the institution and the Corporation, for the protection of the institution's rights as a [lender;]

(c) to the closing of the loan on or before the date fixed in Paragraph 10 for the closing.
(d) to the closing of the sale of Purchaser's home.

B. Purchaser shall apply for the loan, shall furnish to the institution, within five (5) days of the date hereof, a[ll] complete information on Purchaser and members of Purchaser's family, as required, shall advise Seller of the name and [address of] the institution to which such application has been made and the date upon which it was made and shall cause to be fu[rnished to] the Corporation, for its consideration, as soon as practicable, the agreement proposed to be made by the institution with [the Corpo]ration. Purchaser shall pay or reimburse Seller the fees charged by the Corporation and its counsel for reviewing and r[eviewing] the aforesaid agreement.

C. Purchaser shall accept any commitment letter complying with the terms of subparagraph A(a) hereof, if issued [and pay] any application, appraisal, commitment or other fees in respect of the loan, and shall comply with the requirements of th[e commit]ment letter other than those relating to the Corporation.

D. Provided that Purchaser shall have fulfilled all of Purchaser's obligations under subparagraph B hereof, if the [aforemen]tioned commitment letter is not issued by the date provided for in subparagraph A(a) hereof, Purchaser shall have th[e right to] terminate this agreement on Notice given not more than five (5) days thereafter, or if the other conditions provided f[or in sub]paragraph A    hereof are not met, Purchaser shall have the right to terminate this agreement on Notice to Seller, and [in] such event all sums theretofore paid on account of the purchase price shall be returned without delay and without intere[st to Pur]chaser, and all parties hereto shall be relieved of and from any further liability hereunder.

*with monthly payments of principal and interest based upon a thirty (30) year p[eriod]

~~Stock certificate and proprietary lease will be delivered~~
~~by mexxxxxx of denial payment and all indentures thereon has been paid.~~

~~Purchaser shall pay the maintenance fees as managing agent and the~~
~~monthly cooperative charges until time made to seller of the loan. Bank~~
~~will be promptly paid moneys at the 10th of each month.~~

~~It is further understood that should the purchaser default in the~~
~~payment of the indentures, seller has the right to foreclose and~~
~~repossess apartment.~~

~~Purchaser has the right to prepay without penalty or any time.~~


IN WITNESS WHEREOF, the parties hereto have duly executed this agreement the day and year first above written.

_____
Seller

_____
Seller

William R. Wright  6/7/8
Purchaser

Marilyn A. Wright  6/7/8
Purchaser


Richard Herz

to

William R. Wright and
Marilyn A. Wright, his wife

CONTRACT OF SALE OF
COOPERATIVE APARTMENT
Form Approved by
The Cooperative Housing
Lawyers Group

Apartment Number: 14A

Address of Premises:
310 West 56th Street
New York, New York 10019

Name of Cooperative Corporation:
310 West 56th Street
Corporation