# EXHIBIT E

# *Empire of America*
### Federal Savings Bank

## COOPERATIVE APARTMENT LOAN SECURITY AGREEMENT


EQUAL HOUSING LENDER

LOAN NO. __1027__  DATE __May 2__, 19__85__
BORROWER(S): __William R. Wright__

COOPERATIVE CORPORATION: __310 West 56th Street Corporation__
COOPERATIVE APARTMENT ADDRESS:
__14A__        __310 West 56th Street__        __New York__        __New York__        __10019__
APT. NO.    STREET ADDRESS                      CITY             STATE         ZIP CODE

**DEFINITIONS:**
Throughout this agreement, the words "I", "me", "my" and "mine" mean the borrower(s) named at the top of this Agreement. The word Lender means Empire of America Federal Savings Bank or any other entity to which Lender's rights and liabilities under this Agreement are transferred.

**PURPOSE:**
To evidence my obligations to repay the loan made to me by Lender, I have signed an adjustable rate promissory note dated as of the date of this Agreement (the "Note") pursuant to which I have agreed to pay specified amounts to Lender on terms set forth in the Note. These amounts include principal and interest and other related charges. This Loan Security Agreement secures my obligation to pay those amounts.

**1. Ownership**
I am the sole owner of __181__ shares of stock and of the proprietary lease for the above-referenced apartment. Only I have the right and power to borrow money using the stock and lease as collateral. The stock and lease have not been used as collateral for any other loan, any part of which remains unpaid as of the date of this Agreement.

**2. Security**
To guarantee that the loan will be repaid when due, I give to Lender a continuing security interest in all of my right, ownership and title to my shares of the cooperative corporation and the proprietary lease for my cooperative apartment. I further give to Lender a continuing security interest in the proceeds of the foregoing documents. After I have repaid all amounts due under the Note and this Agreement, the documents referred to in paragraph 2 of this Agreement shall be returned to me. Lender shall have no further responsibility to me after returning those documents. I authorize Lender to file in the appropriate office, without my signature, Financing Statements with respect to this security interest. I agree to pay all fees required for filing such Financing Statements upon demand.

**3. Actions by Lender to Prevent Lease Default**
Lender may make any payments on my behalf or perform any acts necessary to prevent any defaults under or violations of the lease. However, Lender shall not be required to do so. If Lender makes any such payments or performs any such acts, I agree to reimburse Lender for such payments or the costs or expenses incurred by Lender in connection with such acts upon demand.

**4. Immediate Repayment**
If any of the following events (called "events of default") shall take place, Lender has the right, without notifying me of such default, without presenting the Note and without demanding payment of the Note, to require the immediate payment of the entire principal balance with interest and any applicable charges due under the terms of the Note or this Agreement by written notice addressed to me. Any such written notice under this paragraph may be sent to me by ordinary mail at the above address. Such notice shall be deemed to have been given when mailed.
  (a) The non-payment of any amount when due under the terms of the Note or this Agreement, or
  (b) The non-payment of any maintenance or other charges, or the failure to comply with any of the other terms of the proprietary lease,
  (c) The termination or expiration without my right to renew of the proprietary lease,
  (d) The commencement against me of any legal proceedings,
  (e) The surrender, transfer, pledging as collateral, assignment, or subletting of my interest in the proprietary lease or cooperative apartment shares,
  (f) The attachment of any lien to my interest in the proprietary lease or cooperative apartment shares,
  (g) Any representation made by me in connection with the loan is inaccurate or misleading,
  (h) Either the cooperative corporation or I become bankrupt or insolvent,
  (i) Any obligation of mine or of the cooperative corporation is declared due and payable prior to maturity,
  (j) The shareholders or directors of the cooperative corporation authorize its dissolution, or
  (k) The cooperative corporation shall issue to any other person shares or a lease purporting to grant such person rights in the apartment.

Bayview 3

CO-OP-7

If any "event of default" as set forth above should take place, Lender shall have the right, in addition to requiring immediate repayment of the loan balance, to take any other action authorized under the terms of the Note or the Uniform Commercial Code. Lender's rights under the Note shall not be limited or restricted by any of the terms of this Agreement.

5. Vacating My Apartment

In any "event of default" as described above, I shall immediately vacate, and give possession of the apartment to, Lender. In the event proceedings to evict me become necessary, I understand that I shall have to pay the cost of such proceedings that such cost shall be added to the balance of my loan, and the principal of the Note shall be increased in the same amount.

6. Sale of Security

If I fail to pay the full amount due within ten (10) days after the notice referred to in paragraph 4 has been given, Lender has the right to sell, assign or deliver the collateral for cash, upon credit or for future delivery. Any such sale may be either public or private. Lender may, but shall not be required, to advertise in advance, the time, place and terms of such sale. Lender will give me five (5) days advance written notice by certified or registered mail, of the time, place and terms of such sale, which notice period the parties agree to be reasonable. Such notice will be deemed given when mailed.

If Lender should sell, assign or deliver the collateral on credit or for future delivery, Lender has the right to keep the collateral in its possession until the entire loan balance has been paid. Lender shall have no liability to anyone if the purchaser at such sale fails to pay the full sales price for the collateral. In case of any such failure by the purchaser, the collateral may be sold by Lender again. At any sale, Lender has the right to purchase the collateral, and if it does, I release all claims which I may have to such collateral.

Lender has the right to deduct from the proceeds of the sale all expenses incurred by it in the collection, sale and delivery of the collateral together with any incidental expenses such as reasonable attorney's fees, brokerage commissions and transfer taxes. After deducting the foregoing expenses, Lender will apply any balance of the sales proceeds against the amounts due under the Note and this Agreement in such order as it deems appropriate. If any surplus remains after the payment of the foregoing sums, Lender will return such surplus to me. I will remain liable for any deficiency.

Lender has the right to keep the collateral in its possession until such time as Lender, in its reasonable judgment, believes that a sales price equal to at least the outstanding loan balance plus interest and applicable charges and expenses can be obtained. Lender shall not be liable to me for responsibility under the lease, or be considered to be the occupant of the apartment. Lender shall be entitled to receive from the corporation any distributions of capital, which distributions are to be applied in reduction of the loan balance.

7. Application of Payments

Lender may, in its discretion, apply any payments made by me to such fees, charges or other amounts due under the terms of the Note and this Agreement in such order and amounts as it deems appropriate, except that any late charge due will not be deducted from any regular monthly payment.

8. Changing This Agreement

This Agreement sets forth the entire understanding between Lender and me. It may not be changed in any way except by a later agreement in writing signed by both Lender and me.

_____Will R Wright_____
(Name)

_____
(Name)

_____
(Name)

_____
(Name)

STATE OF NEW YORK  } ss.:
COUNTY OF New York }

On the __2nd__ day of __May__, 19 _85_ before me personally came
__William R. Wright__, to me known to be the individual(s) described in and who executed the above instrument, who duly acknowledged the execution of same.

_____Wendy C Hickey_____
Notary

WENDY C. HICKEY
Notary Public, State of New York
No. 01-H1-4807405
Qualified in Westchester County
Cert. Filed in Westchester County
Commission Expires March 30, 19 _86_

Bayview 4

CO-OP-7

BV# 316291

## ASSIGNMENT OF COLLATERAL DOCUMENTS

KNOW ALL MEN BY THESE PRESENTS, that , whose address is: ("Assignor"), for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00), and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, does hereby unconditionally and without reservation grant, bargain, sell, assign, transfer and set over unto:

("Assignee"), its successors and assigns, whose address is:


("Assignee") all of Assignor's right, title and interest in and to all documents, agreements, insurance policies, etc., made by such party and
**WILLIAM WRIGHT**
("Borrowers") in favor of Assignor made in connection with a loan to such parties secured by Stock Certificate.

Assignor also hereby assign and conveys, WITHOUT RECOURSE, AND WITHOUT ANY REPRESENTATIONS OR WARRANTIES WHATSOEVER, WHETHER EXPRESS, IMPLIED, OR BY OPERATION OF LAW, any and all right, title, and interest which the Assignor may have in any and all documents or instrument's in Assignor's loan files which were executed by the borrower in conjunction with the Note, including but not limited to any of the following:
(1) Stock Certificate, (2) Stock Power (3) Loan Security and Pledge Agreement (4) Proprietary Lease, (5) Recognition Agreement (6) UCC Financing Statement and (7) Note Modification Agreement, if any (collectively, hereinafter referenced as the "Collateral Loan Documents")

Assignee accepts the foregoing assignment and assumes all the duties and obligations of the Note and the Collateral Documents referenced herein on the Assignor's part to be performed thereunder.

IN WITNESS WHEREOF, Assignor has executed the foregoing Assignment on December 15, 2005.

Signed, sealed and delivered in the presence of:


Assignor: EMPIRE OF AMERICA FSB, now known as M & T BANK,
by BAYVIEW LOAN SERVICING, it's attorney in fact

By: _____

Name: ROBERT G. HALL
Title: Vice-President

Bayview 5

Pay to the order of bearer without recourse **Empire of America**
Federal Savings Bank

## COOPERATIVE APARTMENT
EMPIRE OF AMERICA FEDERAL SAVINGS ADJUSTABLE RATE NOTE

Date: May 2, 1985                                    250368735

By: William Shibo
    Authorized Officer

NOTICE TO BORROWER: THIS NOTE CONTAINS A PROVISION ALLOWING FOR CHANGES IN THE INTEREST RATE. INCREASES IN THE INTEREST RATE WILL RESULT IN HIGHER PAYMENTS. DECREASES IN THE INTEREST RATE WILL RESULT IN LOWER PAYMENTS.

Cooperative Apartment Address:
14A         310 West 56th Street          New York         New York         10019
Apt. No.    Street Address                City             State            Zip Code

In this Note, the terms "I", "me" and "my" refer to each borrower signing below. The term "Note Holder" refers to Empire of America Federal Savings Bank or any purchaser or assignee of the Note.

**1. Promise to Pay**
In return for a loan that I have received, I promise to pay U.S. $105,000.00 (this amount will be called "principal"), plus interest, to the order of the Note Holder.

**2. Interest**
Interest will be charged on that portion of the principal which has not been paid. Interest will be charged beginning on the date of the Note and continuing until the full amount of principal has been repaid.
Beginning on the date of the Note, I will pay interest at a yearly rate of 9.5 % (the "Initial Interest Rate"). The interest rate that I will pay may change in accordance with Section 4 of this Note until my loan is paid. Interest rate changes will occur on the 1st day of June, 1986 and on that day of the month every 12 months thereafter. Each date on which the rate of interest may change will be called a "Change Date."

**3. Payments**
A. Schedule
I will pay $803.54 which represents interest from the date of this Note to the first day of June, 1985. Thereafter, I will make 360 monthly payments; each due on the first day of the month, beginning on July 1, 1985. I will pay all sums due and owing by me under this Note no later than June 1, 2015 (the "Final Payment Date"). Except as otherwise provided in the Loan Security Agreement described in Section 10 below, payments will be applied first to interest due and then to principal.

B. Place of Payment
I will make my monthly payment at the location designated as the place of payment from time to time by the Note Holder.

C. Prepayment
I have the right to make payments of principal at any time before they are due. When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delay in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment will reduce the amount of my monthly payments after the first Change Date following my partial prepayment unless there is an offset by an interest rate increase.

D. Amount of Monthly Payments
Until the first Change Date, my monthly payments will be in the amount of U.S. $882.91.
If the interest rate that I pay changes, the amount of my monthly payments will change. Increases in the interest rate will result in higher payments (unless my prepayments since the last Change Date offset the increases in my monthly payments).
The amount of my monthly payments will always be set to be sufficient to repay my loan in full at the new interest rate in substantially equal payments by the final payment date.

**4. Interest Rate Changes**
Any change in the interest rate will be based on changes in an index.

A. The Index
Unless box (2) immediately below is checked and another Index designated, the Index is the weekly average yield on one year United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board.

Box 2☐ The Index is: _____

William R. Wright

The level of the Index on any given day will be referred to as the "Index Figure". If the Index used ceases to be made available by its then current publisher, the Note Holder will set the Note interest rate by using a comparable Index.

B. Setting the New Interest Rate
The Note Holder will determine the most recent Index Figure available 45 days prior to each Change Date. The Note Holder will then add to that Index Figure a margin of three percentage points. Subject to the limitation described below, this total will become the new interest rate effective as of the Change Date and will remain in effect until the next Change Date. The new interest rate on each Change Date will be rounded to the nearest one-eighth of one percentage point.

C. Limitations on the Change
The interest rate will not change by more than two percentage points on any Change Date.

D. Effective Date of Changes
Each new interest rate will become effective on the Change Date. If my monthly payment changes as a result of a change in the interest rate, my monthly payment will change as of the first monthly payment date after the Change Date.

E. Notice of Change
The Note Holder will mail me a notice by first class mail at least thirty and no more than forty-five days before each Change Date if the interest rate is to change. The notice will advise me of:
In addition, interest rate changes over the term of the loan will never result Bayview 6
simple interest rate being above 18%.

(i) the new interest rate on this Note;
(ii) the amount of my new monthly payment; and
(iii) any additional matters which the Note Holder is required to disclose.

### 5. Failure to Pay as Required

**A. Late Charge for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment within fifteen (15) calendar days after the date it is due, a late charge will be immediately due. The amount of the charge will be 2% of my overdue payment of principal and interest.

**B. Default**
Notwithstanding Section 5(A) above, if I do not pay any monthly payment within thirty (30) days of its due date, I will be in default. If I am in default, the Note Holder may accelerate the Note and declare the full amount of principal which has not been paid and all the interest that I owe on that amount to be immediately due in full.
Even if the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**C. Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all its reasonable costs and expenses to the extent permitted by applicable law. Those expenses may include, for example, reasonable attorneys' fees.

### 6. Waiver of Rights

I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest").

### 7. Notices Generally

Except for the notice provided in Section 4(E), any notice that must be given to me under this Note will be given by mailing it by certified mail. All notices will be addressed to me at the Cooperative Apartment Address above. Notices will be mailed to me at a different address if I give the Note Holder written notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at: One Main Place, Buffalo, New York 14202, Attn: Consumer Loan Department. I will give notices to the Note Holder at a different address if I am given a notice of that different address.

### 8. Responsibility of Persons Under this Note

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and agrees to all of the provisions of this Note. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 9. Loan Charges

If this loan is subject to a law which sets maximum loan charges, and that law is interpreted so that the interest or other loan charges collected or to be collected in connection with this loan would exceed permitted limits: (A) any such loan charges shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (B) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

### 10. This Note Secured by a Loan Security Agreement

In addition to the protection given to the Note Holder under this Note, a LOAN SECURITY AGREEMENT affecting the shares of cooperative corporation stock and proprietary lease evidencing my ownership of the corporative apartment described above protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Agreement also describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

_____ /s/ William R. Wright

_____

_____

_____

STATE OF NEW YORK
COUNTY OF __New York__   ss.:

On the __2nd__ day of __May__, 19__85__, before me personally came __William R. Wright__ to me known to be the individual(s) described in and who executed the above instrument, who duly acknowledged the execution of same.

WENDY C. HICKEY
Notary Public, State of New York
No. 01-H1-4807405
Qualified in Westchester County
Cert. Filed in Westchester County
Commission Expires March 30, 1986

_/s/ Wendy C. Hickey_
Notary

Bayview 7

CO-OP-5