# EXHIBIT H

# PROPRIETARY LEASE

Apt. No.:

Shares:

310 WEST 56TH STREET CORPORATION

*Lessor,*

TO

*Lessee.*

## PROPRIETARY LEASE

# INDEX

|  | PAGE | PAR. |
|---|---|---|
| Abatement of rent — |  |  |
|     damage to apartment | 3 | 4(b) |
|     not authorized — no defense | 6 | 12 |
| Additional rent payable as rent | 1 | 1(a) |
| Air conditioning | 3 | 3 |
| Alterations by Lessee — |  |  |
|     consent required | 12 | 21(a) |
|     mortgagee's requirements | 11 | 18(d) |
| Amendment of lease by shareholders | 5 | 6 |
| Annual reports by Lessor | 4 | 5 |
| "Apartment" defined | 1 |  |
| Apartment — |  |  |
|     surrender on lease termination | 13 | 21(c) |
|     use as dwelling — guests | 7 | 14 |
| Assignment of lease: |  |  |
|     Conditions to be complied with | 7 | 16(a) |
|     Death of Lessee | 8 | 16(b) |
|     Fees — legal and other expenses | 7 | 16(a) |
|     Directors' consent — discretion | 8 | 16(c) |
|     Release of Lessee | 8 | 16(d) |
|     Restrictions on | 18 | 31(c) |
|     Statement that lease in effect | 9 | 16(f) |
| Assignment of Lessor's rights against occupant | 5 | 8 |
| Attorneys' fees and other expenses: |  |  |
|     Action on Lessee's default | 16 | 28 |
|     Assignment of lease | 7 | 16(a) |
| Automobiles — |  |  |
|     Lessor not responsible for damage | 17 | 29(c) |
|     House Rules — impeding access to entrance | 28 | 18 |
| Balcony — use and maintenance | 5 | 7 |
| Bankruptcy of Lessee — termination of lease | 18 | 31(b) |
| Books of account — inspection | 4 | 5 |
| Building, damage to | 3 | 4(a) |
| Cancellation of lease by Lessee — |  |  |
|     "escape clause" | 21 | 35(a) |
|     extension | 23 | 36(a) |
|     by 80% of shares | 23 | 36(b) |
| Cancellation of prior lease and tenancy | 6 | 9 |

|  | PAGE | PAR. |
|---|---|---|
| Cash requirements of Lessor — |  |  |
| defined | 2 | 1(c) |
| failure to fix | 3 | 1(g) |
|  | 5 | 6 |
| Changes in provisions of lease | 25 | 46 |
| Changes in lease — not orally | 19 | 31(j) |
| Condemnation | 19 | 31(j) |
| Continuance of cooperative | 23 | 37 |
| Cooperation by Lessee | 15 | 24 |
| Covenants — to whom applicable | 24 | 40 |
| Damage to building — |  |  |
| repair by Lessor | 3 | 4(a) |
| abatement of rent | 4 | 4(b) |
| expiration of lease | 4 | 4(c) |
| waiver of subrogation | 4 | 4(d) |
| Death of Lessee — |  |  |
| assignment of lease | 8 | 16(b) |
| bankruptcy exception | 18 | 31(b) |
| Default by Lessee: |  |  |
| Covenants — default in performance | 18 | 31(e) |
| Lessor's rights after default | 19 | 32(a) |
| Lessor's right to remedy | 12 | 19 |
| Reimbursement of Lessor's expenses | 16 | 28 |
| Sale of Lessee's shares | 20 | 32(c) |
| Subtenant — collection of rent | 20 | 32(b) |
| Demised premises | 1 |  |
| Directors — |  |  |
| authority not exercisable by others | 2 | 1(d) |
| determinations conclusive | 2 | 1(c) |
| failure to fix cash requirements | 3 | 1(g) |
| Entry — apartment and storage space | 15 | 25 |
| Equipment and appliances — remedying defects | 11 | 18(c) |
| "Escape clause"—cancellation of lease by Lessee | 21 | 35(a) |
| Expenses of Lessor on Lessee's default | 16 | 28 |
| Expiration of lease — fixed date | 1 |  |
| Expiration of lease — conditions | 17 | 31 |
| Fire insurance — rate increase, Lessee's use | 12 | 20 |
| Fire or other cause — |  |  |
| damage to building | 3 | 4(a) |
| abatement of rent | 4 | 4(b) |
| expiration of lease | 4 | 4(c) |
| Fixtures — removal by Lessee | 13 | 21(b) |
| Foreclosure of mortgage — receiver | 24 | 39 |
| Guests — in apartment | 7 | 14 |

|  | PAGE | PAR. |
|---|---|---|
| House Rules — | 27 | |
| existing | 6 | 13 |
| amendment — compliance covenant | 16 | 29(a) |
| Immunities of Lessor | 6 | 11 |
| Indemnity — by Lessee | 24 | 42 |
| Injunction — by Lessor | | |
| Insurance — | 12 | 20 |
| increase in rates | 4 | 4(d) |
| waiver of subrogation, effects | 24 | 41 |
| Jury trial waiver | 15 | 25 |
| Key — Lessee to furnish | 16 | 29(b) |
| Laundry and washing machines — use | | |
| Lease — | | |
| cancellation by Lessee — "escape clause" | 21 | 35(a) |
| cancellation by Lessee — extension | 23 | 36(a) |
| cancellation by 80% of shares | 23 | 36(b) |
| changes in provisions | 5 | 6 |
| existing lease superseded by | 6 | 9 |
| expiration — see "Termination of Lease" | 17 | 31 |
| form — all leases | 5 | 6 |
| partial invalidity, effect | 25 | 44 |
| pledge by Lessee | 9 | 17 |
| Lessee more than one person | 25 | 43 |
| Maintenance (rent) — see "Rent" | | |
| Maintenance of building by Lessor-Directors' powers | 3 | 3 |
| Marginal headings not part of lease | 25 | 45 |
| Mechanics' liens | 14 | 23 |
| Mortgage — | 24 | 39 |
| foreclosure and receiver | 11 | 18(d) |
| provisions as to alterations | 14 | 22 |
| subordination clause | 2 | 1(f) |
| Mortgage payments as Paid-in Surplus | 11 | 18(b) |
| Noises prohibited | 16 | 27 |
| Notices | 18 | 31(f) |
| Objectionable conduct — see "Termination of Lease" | 18 | 31(c) |
| Occupancy by unauthorized person | 11 | 18(b) |
| Odors prohibited | 25 | 44 |
| Partial invalidity of Lease — effect | 5 | 7 |
| Penthouse — use and maintenance | 9 | 17 |
| Pledge of shares and lease by Lessee | 6 | 10 |
| Quiet enjoyment | | |

|  | PAGE | PAR. |
|---|---|---|
| Remedies of Lessor — | 24 | 42 |
| additional remedies | 19 | 32(a) |
| default by Lessee | 16 | 28 |
| expenses recoverable | 12 | 19 |
| Lessor's right to remedy defaults | 12 | 19 |
| Rent (maintenance)— | 1 | 1(a) |
| how calculated | 19 | 32(a) |
| default — Lessor's rights | 3 | 1(g) |
| failure of Directors to fix | 2 | 1(e) |
| issuance of additional shares | 6 | 12 |
| no abatement or defense | 1 | 1(a) |
| payment monthly | 20 | 32(b) |
| subtenants, collection from | 20 | 32(b) |
| Repairs — | 11 | 18(a) |
| Lessee's obligations | 3 | 2 |
| Lessor's obligations | 4 | 5 |
| Report — annual, Lessor to furnish | 5 | 7 |
| Roofs — use | 3 | 3 |
| Services — Lessor's obligations | | |
| Shares — | 2 | 1(b) |
| accompanying lease, specified | 2 | 1(c) |
| additional shares issued | 7 | 16(a) |
| all shares transferred on assignment | 20 | 32(c) |
| surrender on lease termination | 16 | 29(b) |
| Storage space | | |
| Subletting — | 7 | 15 |
| consent required | 8 | 16(e) |
| further subletting, new consent | 20 | 32(b) |
| rent — collection from subtenant | 18 | 31(c) |
| violation of restrictions | 14 | 22 |
| Subordination to mortgages and ground leases | 4 | 4(d) |
| Subrogation waiver — Lessor's obligations | | |
| Surrender of apartment — | 13 | 21(c) |
| lease expiration | 21 | 34 |
| lease termination | 21 | 34 |
| liability continues | 1 | |
| Term of lease | | |
| Termination of lease — | 17 | 31 |
| conditional limitation | 18 | 31(c) |
| assignment unauthorized | 18 | 31(b) |
| bankruptcy of Lessee | 19 | 31(i) |
| condemnation | 18 | 31(c) |
| covenants breached | 18 | 31(c) |

| | PAGE | PAR. |
|---|---|---|
| Termination of lease — | | |
| default to lending institution | 19 | 31(g) |
| destruction of building | 19 | 31(i) |
| occupancy unauthorized | 18 | 31(c) |
| objectionable conduct | 18 | 31(f) |
| rent default | 18 | 31(d) |
| shares, Lessee ceases to own | 18 | 31(a) |
| subletting unauthorized | 18 | 31(c) |
| termination of all leases | 19 | 31(h) |
| Terrace — use and maintenance | 5 | 7 |
| Third party occupant — Lessor's rights | 5 | 8 |
| Use of apartment — | 7 | 14 |
| as a dwelling | 11 | 18(d) |
| compliance with requirements | 12 | 20 |
| insurance rate increase | | |
| Waiver — | 4 | 4(d) |
| of subrogation, Lessor's obligation | 15 | 26 |
| no waiver by Lessor | 21 | 33 |
| right of redemption, by Lessee | 24 | 41 |
| trial by jury | 17 | 30 |
| Window cleaning | | |

# PROPRIETARY LEASE

PROPRIETARY LEASE, made as of          , 197 , by and between 310 West 56th St. Corporation, a New York corporation, having an office c/o  Charles H. Greenthal & Co., Inc., 18 E. 48th St., NY, NY 10017 hereinafter called the Lessor, and
hereinafter called the Lessee.

WHEREAS the Lessor is the owner of the building, hereinafter called the building, and the land in the Borough of Manhattan, City of New York, known as and by the street number  310 West 56th Street,

WHEREAS, the Lessee is the owner of          shares of the Lessor, to which this lease is appurtenant and which have been allocated to Apartment     in the building;

Now, THEREFORE in consideration of the premises, the Lessor hereby leases to the Lessee, and the Lessee hires from the Lessor, subject to the terms and conditions hereof, Apartment          in the building (hereinafter referred to as the apartment) for a term from          , 19 , until September 30, 2029 (unless sooner terminated as hereinafter provided). As used herein "the apartment" means the rooms in the building as partitioned on the date of the execution of this lease designated by the above-stated apartment number, together with their appurtenances and fixtures and any closets, terraces, balconies, roof, or portion thereof outside of said partitioned rooms, which are allocated exclusively to the occupant of the apartment.

*Demised Premises*

*Term .*

1. (a) The rent (sometimes called maintenance) payable by the Lessee for each year, or portion of a year, during the term shall equal that proportion of the Lessor's cash requirements for such year, or portion of a year, which the number of shares of Lessor allocated to the apartment bears to the total number of shares of the Lessor issued and outstanding on the date of the determination of such cash requirements. Such maintenance shall be payable in equal monthly installments in advance on the first day of each month, unless the Board of Directors of the Lessor (hereinafter called Directors) at the time of its determination of the cash requirements shall otherwise direct. The Lessee shall also pay such additional rent as may be provided for herein when due.

*Rent (Maintenance) How Fixed*

(b) In every proprietary lease heretofore executed by the Lessor there has been specified, and in every proprietary lease hereafter executed by it there

*Accompanying Shares to Be Specified in Proprietary Leases*

-102-

will be specified, the number of shares of the Lessor issued to a lessee simultaneously therewith.

**Cash Requirements Defined**

(c) "Cash requirements" whenever used herein shall mean the estimated amount in cash which the Directors shall from time to time in its judgment determine to be necessary or proper for (1) the operation, maintenance, care, alteration and improvement of the corporate property during the year or portion of the year for which such determination is made; (2) the creation of such reserve for contingencies as it may deem proper; and (3) the payment of any obligations, liabilities or expenses incurred or to be incurred, after giving consideration to (i) income expected to be received during such period (other than rent from proprietary lessees), and (ii) cash on hand which the Directors in its discretion may choose to apply. The Directors may from time to time modify its prior determination and increase or diminish the amount previously determined as cash requirements of the corporation for a year or portion thereof. No determination of cash requirements shall have any retroactive effect on the amount of the rent payable by the lessee for any period prior to the date of such determination. All determinations of cash requirements shall be conclusive as to all lessees.

**Authority Limited to Board of Directors**

(d) Whenever in this paragraph or any other paragraph of this lease, a power or privilege is given to the Directors, the same may be exercised only by the Directors, and in no event may any such power or privilege be exercised by a creditor, receiver or trustee.

**Issuance of Additional Shares**

(e) If the Lessor shall hereafter issue shares (whether now or hereafter authorized) in addition to those issued on the date of the execution of this lease, the holders of the shares hereafter issued shall be obligated to pay rent at the same rate as the other proprietary lessees from and after the date of issuance. If any such shares be issued on a date other than the first or last day of the month, the rent for the month in which issued shall be apportioned. The cash requirements as last determined shall, upon the issuance of such shares, be deemed increased by an amount equal to such rent.

**Failure to Fix Cash Requirements**

(f) The omission of the Directors to determine the Lessor's cash requirements for any year or portion thereof shall not be deemed a waiver or modification in any respect of the covenants and provisions hereof, or a release of the Lessee from the obligation to pay the maintenance or any installment thereof, but the maintenance computed on the basis of the cash requirements as last determined for any year or portion thereof shall thereafter continue to be the maintenance until a new determination of cash requirements shall be made.

2.  The Lessor shall at its expense keep in good repair all of the building including all of the apartments, the sidewalks and courts surrounding the same, and its equipment and apparatus except those portions the maintenance and repair of which are expressly stated to be the responsibility of the Lessee pursuant to Paragraph 18 hereof.

*Lessor's Repairs*

3.  The Lessor shall maintain and manage the building as a first-class apartment building, and shall keep the elevators and the public halls, cellars and stairways clean and properly lighted and heated, and shall provide the number of attendants requisite, in the judgment of the Directors, for the proper care and service of the building, and shall provide the apartment with a proper and sufficient supply of hot and cold water and of heat, and if there be central air conditioning equipment supplied by the Lessor, air conditioning when deemed appropriate by the Directors. The covenants by the Lessor herein contained are subject, however, to the discretionary power of the Directors to determine from time to time what services and what attendants shall be proper and the manner of maintaining and operating the building, and also what existing services shall be increased, reduced, changed, modified or terminated.

*Services by Lessor*

4.  (a)  If the apartment or the means of access thereto or the building shall be damaged by fire or other cause covered by multiperil policies commonly carried by cooperative corporations in New York City (any other damage to be repaired by Lessor or Lessee pursuant to Paragraphs 2 and 18, as the case may be), the Lessor shall at its own cost and expense, with reasonable dispatch after receipt of notice of said damage, repair or replace or cause to be repaired or replaced, with materials of a kind and quality then customary in buildings of the type of the building, the building, the apartment, and the means of access thereto, including the walls, floors, ceilings, pipes, wiring and conduits in the apartment. Anything in this Paragraph or Paragraph 2 to the contrary, Lessor shall not be required to repair or replace, or cause to be repaired or replaced, equipment, fixtures, furniture, furnishings or decorations installed by the Lessee or any of his predecessors in title nor shall the Lessor be obligated to repaint or replace wallpaper or other decorations in apartments.

*Damage to Apartment or Building*

(b)  In case the damage resulting from fire or other cause shall be so extensive as to render the apartment partly or wholly untenantable, or if the means of access thereto shall be destroyed, the rent hereunder shall proportionately abate until the apartment shall again be rendered wholly tenantable or the means of access restored; but if said damage shall be caused by the act or negligence of the Lessee or the agents, employees, guests or members of the family of the Lessee or any occupant of the apartment, such

*Rent Abatement*

rental shall abate only to the extent of the rental value insurance, if any, collected by Lessor with respect to the apartment.

(c)  If the Directors shall determine that (i) the building is totally destroyed by fire or other cause, or (ii) the building is so damaged that it cannot be repaired within a reasonable time after the loss shall have been adjusted with the insurance carriers, or (iii) the destruction or damage was caused by hazards which are not covered under the Lessor's insurance policies then in effect; and if in any such case the record holders of at least two-thirds of the issued shares, at a shareholders' meeting duly called for that purpose held within 120 days after the determination by the Directors, shall vote not to repair, restore or rebuild, then upon the giving of notice pursuant to Paragraph 31 hereof, this Lease and all other proprietary leases and all right, title and interest of the parties thereunder and the tenancies thereby created, shall thereupon wholly cease and expire and rent shall be paid to the date of such destruction or damage. The Lessee hereby waives any and all rights under Section 227 of the Real Property Law and in no event shall the Lessee have any option or right to terminate this Lease.

(d)  Lessor agrees to use its best efforts to obtain a provision in all insurance policies carried by it waiving the right of subrogation against the Lessee; and, to the extent that any loss or damage is covered by the Lessor by any insurance policies which contain such waiver of subrogation, the Lessor releases the Lessee from any liability with respect to such loss or damage. In the event that the Lessee suffers loss or damage for which Lessor would be liable, and Lessee carries insurance which covers such loss or damage and such insurance policy or policies contain a waiver of subrogation against the Landlord, then in such event Lessee releases Lessor from any liability with respect to such loss or damage.

5.  The Lessor shall keep full and correct books of account at its principal office or at such other place as the Directors may from time to time determine, and the same shall be open during all reasonable hours to inspection by the Lessee or a representative of the Lessee. The Lessor shall deliver to the Lessee within a reasonable time after the end of each fiscal year an annual report of corporate financial affairs, including a balance sheet and a statement of income and expenses, certified by an independent certified public accountant.

6.  Each proprietary lease shall be in the form of this lease, unless a variation of any lease is authorized by lessees owning at least two-thirds of the Lessor's shares then issued and executed by the Lessor and lessee affected. The form and provisions of all the proprietary leases then in effect and thereafter

to be executed may be changed by the approval of lessees owning at least 75% of the Lessor's shares then issued, and such changes shall be binding on all lessees even if they did not vote for such changes except that the proportionate share of rent or cash requirements payable by any lessee may not be increased nor may his right to cancel the lease under the conditions set forth in Paragraph 35 be eliminated or impaired without his express consent. Approval by lessees as provided for herein shall be evidenced by written consent or by affirmative vote taken at a meeting called for such purpose.

7. If the apartment includes a terrace, balcony, or a portion of the roof adjoining a penthouse, the Lessee shall have and enjoy the exclusive use of the terrace or balcony or that portion of the roof appurtenant to the penthouse, subject to the applicable provisions of this lease and to the use of the terrace, balcony or roof by the Lessor to the extent herein permitted. The Lessee's use thereof shall be subject to such regulations as may, from time to time, be prescribed by the Directors. The Lessor shall have the right to erect equipment on the roof, including radio and television aerials and antennas, for its use and the use of the lessees in the building and shall have the right of access thereto for such installations and for the repair thereof. The Lessee shall keep the terrace, balcony, or portion of the roof appurtenant to his apartment clean and free from snow, ice, leaves and other debris and shall maintain all screens and drain boxes in good condition. No planting, fences, structures or lattices shall be erected or installed on the terraces, balconies, or roof of the building without the prior written approval of the Lessor. No cooking shall be permitted on any terraces, balconies or the roof of the building, nor shall the walls thereof be painted by the Lessee without the prior written approval of the Lessor. Any planting or other structures erected by the Lessee or his predecessor in interest may be removed and restored by the Lessor at the expense of the Lessee for the purpose of repairs, upkeep or maintenance of the building.

*Penthouses, Terraces and Balconies*

8. If at the date of the commencement of this lease, any third party shall be in possession or have the right to possession of the apartment, then the Lessor hereby assigns to the Lessee all of the Lessor's rights against said third party from and after the date of the commencement of the term hereof, and the Lessee by the execution hereof assumes all of the Lessor's obligations to said third party from said date. The Lessor agrees to cooperate with the Lessee, but at the Lessee's expense, in the enforcement of the Lessee's rights against said third party.

*Assignment of Lessor's Rights Against Occupant*

9. If at the date of the commencement of this lease, the Lessee has the right to possession of the apartment under any agreement or statutory tenancy,

*Cancellation of Prior Agreement*

this lease shall supersede such agreement or statutory tenancy which shall be of no further effect after the date of commencement of this lease, except for claims theretofore arising thereunder.

**Quiet Enjoyment**

10. The Lessee, upon paying the rent and performing the covenants and complying with the conditions on the part of the Lessee to be performed as herein set forth, shall, at all times during the term hereby granted, quietly have, hold and enjoy the apartment without any let, suit, trouble or hindrance from the Lessor, subject, however, to the rights of present tenants or occupants of the apartment, and subject to any and all mortgages and underlying leases of the land and building.

**Indemnity**

11. The Lessee agrees to save the Lessor harmless from all liability, loss, damage and expense arising from injury to person or property occasioned by the failure of the Lessee to comply with any provision hereof, or due wholly or in part to any act, default or omission of the Lessee or of any person dwelling or visiting in the apartment, or by the Lessor, its agents, servants or contractors when acting as agent for the Lessee as in this lease provided. This paragraph shall not apply to any loss or damage when Lessor is covered by insurance which provides for waiver of subrogation against the Lessee.

**Payment of Rent**

12. The Lessee will pay the rent to the Lessor upon the terms and at the times herein provided, without any deduction on account of any set-off or claim which the Lessee may have against the Lessor, and if the Lessee shall fail to pay any installment of rent promptly, the Lessee shall pay interest thereon at the maximum legal rate from the date when such installment shall have become due to the date of the payment thereof, and such interest shall be deemed additional rent hereunder.

**House Rules**

13. The Lessor has adopted House Rules which are appended hereto, and the Directors may alter, amend or repeal such House Rules and adopt new House Rules. This lease shall be in all respects subject to such House Rules which, when a copy thereof has been furnished to the Lessee, shall be taken to be part hereof, and the Lessee hereby covenants to comply with all such House Rules and see that they are faithfully observed by the family, guests, employees and subtenants of the Lessee. Breach of a House Rule shall be a default under this lease. The Lessor shall not be responsible to the Lessee for the nonobservance or violation of House Rules by any other lessee or person.

14. The Lessee shall not, without the written consent of the Lessor on such conditions as Lessor may prescribe, occupy or use the apartment or permit the same or any part thereof to be occupied or used for any purpose other than as a private dwelling for the Lessee and Lessee's spouse, their children, grandchildren, parents, grandparents, brothers and sisters and domestic employees, and in no event shall more than one married couple occupy the apartment without the written consent of the Lessor. In addition to the foregoing, the apartment may be occupied from time to time by guests of the Lessee for a period of time not exceeding one month, unless a longer period is approved in writing by the Lessor, but no guests may occupy the apartment unless one or more of the permitted adult residents are then in occupancy or unless consented to in writing by the Lessor.

<span style="float:right">Use of Premises</span>

15. Except as provided in Paragraph 38 of this lease, the Lessee shall not sublet the whole or any part of the apartment or renew or extend any previously authorized sublease, unless consent thereto shall have been duly authorized by a resolution of the Directors, or given in writing by a majority of the Directors or, if the Directors shall have failed or refused to give such consent, then by lessees owning at least 65% of the then issued shares of the Lessor. Consent by lessees as provided for herein shall be evidenced by written consent or by affirmative vote taken at a meeting called for such purpose. Any consent to subletting may be subject to such conditions as the Directors or lessees, as the case may be, may impose. There shall be no limitation on the right of Directors or lessees to grant or withhold consent, for any reason or for no reason, to a subletting.

<span style="float:right">Subletting</span>

16. Except as provided in Paragraph 38 of this lease,

(a) The Lessee shall not assign this lease or transfer the shares to which it is appurtenant or any interest therein, and no such assignment or transfer shall take effect as against the Lessor for any purpose, until

<span style="float:right">Assignment</span>

(i) An instrument of assignment in form approved by Lessor executed and acknowledged by the assignor shall be delivered to the Lessor; and

(ii) An agreement executed and acknowledged by the assignee in form approved by Lessor assuming and agreeing to be bound by all the covenants and conditions of this lease to be performed or complied with by the Lessee on and after the effective date of said assignment shall have been delivered to the Lessor, or, at the request of the Lessor, the assignee shall have surrendered the assigned lease and entered into a new lease in the same form for the remainder of the term, in which case the Lessee's

lease shall be deemed cancelled as of the effective date of said assignment; and

(iii)  All shares of the Lessor to which this lease is appurtenant shall have been transferred to the assignee, with proper transfer taxes paid and stamps affixed; and

(iv)  All sums due from the Lessee shall have been paid to the Lessor, together with a sum to be fixed by the Directors to cover reasonable legal and other expenses of the Lessor and its managing agent in connection with such assignment and transfer of shares; and

(v)  A search or certification from a title or abstract company as the Directors may require; and

(vi)  Except in the case of an assignment, transfer or bequest to the Lessee's spouse, of the shares and this lease, and except as provided. in Paragraph 38 of this lease, consent to such assignment shall have been authorized by resolution of the Directors, or given in writing by a majority of the Directors; or, if the Directors shall have failed or refused to give such consent within 30 days after submission of references to them or Lessor's agent, then by lessees owning of record at least 65% of the then issued shares of the Lessor. Consent by lessees as provided for herein shall be evidenced by written consent or by affirmative vote taken at a meeting called for such purpose in the manner as provided in the by-laws.

**Consents: On Death of Lessee**
(b)  If the Lessee shall die, consent shall not be unreasonably withheld to an assignment of the lease and shares to a financially responsible member of the Lessee's family (other than the Lessee's spouse as to whom no consent is required).

**Consents Generally: Stockholders' and Directors' Obligations to Consent**
(c)  There shall be no limitation, except as above specifically provided, on the right of Directors or lessees to grant or withhold consent, for any reason or for no reason, to an assignment.

**Release of Lessee Upon Assignment**
(d)  If the lease shall be assigned in compliance herewith, the Lessee-assignor shall have no further liability on any of the covenants of this lease to be thereafter performed.

**Further Assignment or Subletting**
(e)  Regardless of any prior consent theretofore given, neither the Lessee nor his executor, nor administrator, nor any trustee or receiver of the property of the Lessee, nor anyone to whom the interests of the Lessee shall pass by law, shall be entitled further to assign this lease, or to sublet the

apartment, or any part thereof, except upon compliance with the requirements of this lease.

(f)  If this lease is then in force and effect, Lessor will, upon request of Lessee, deliver to the assignee a written statement that this lease remains on the date thereof in force and effect; but no such statement shall be deemed an admission that there is no default under the lease.

(g)  If the purchase by the Lessee of the shares accompanying this Proprietary Lease was financed, the Lessor agrees to withhold consent to any assignment by the Lessee or a subletting of the Apartment unless such assignment or subletting is accompanied by the written consent of the Lender.

17.  The Lessee may pledge and assign this Lease and the shares of the Lessor allocated to the Apartment as security for a loan made to the Lessee by a bank, trust company, insurance company, or other recognized lending institution (the "Lender"), for any purpose whatsoever, provided, however, that the certificate representing the shares allocated to the Apartment and this Lease may be assigned to the Lender only as security for repayment of the loan. The "Lender" may include the seller or any third party when the pledge and assignment is for the purpose of purchasing the shares allocated to the apartment and this Lease and said shares are assigned to the Lender only as security for the repayment of the Loan.

In the event of a default by the Lessee in any of the terms, covenants, provisions or conditions of this Lease, the Lessor will give written notice thereof to the Lender if written notice of the name and address of the Lender has been given by registered or certified mail to the Lessor prior to the date of any such default. If the Lessee shall fail to cure said default within the time and in the manner provided for in this Lease, then the Lender shall have an additional period of time equal to the time originally given to the Lessee to cure said default, and the Lessor will not act upon said default until the time of the Lender to cure said default has elapsed and the Lender has not cured said default.

In the event of a default by the Lessee in any of the terms, covenants, provisions or conditions of this Lease, or in the payment to the Lender of any installment of principal or interest or in the performance of any other obligation of the Lessee to the Lender, the Lessor after written notice thereof from the Lender will exercise the right of termination of this Lease granted to the Lessor pursuant to Paragraph 31 hereof, and if the Lessee shall fail to vacate the apartment, will institute summary dispossess proceedings against the Lessee and take all steps and do all acts thereafter required in order to obtain

possession of the apartment, all at the expense of the Lender, provided, however, that the Lender shall meanwhile pay all maintenance charges and other charges becoming due hereunder for the account of the Lessee until this Lease and the shares allocated to the apartment are acquired for personal occupancy.

If Lessor shall fail to exercise its right to terminate and/or to commence summary proceedings or to take all steps or do all acts required to be done pursuant hereto, then and in that event, Lessor shall execute and deliver to the Lender a power of attorney coupled with an interest to act in the name of the Lessor in any of the ways provided for herein at the Lender's sole expense, and if the Lessor shall fail to execute and deliver such power of attorney within five days after demand, such power of attorney may be executed by the Lender on behalf of and as the agent for the Lessor. The Lessee agrees that until any such loan is repaid to the Lender in full with interest, the Lessee shall not have any right to cancel this lease as provided in Paragraph 35 hereof, and the Lessor agrees that until it receives written notice from the Lender that the entire amount of the loan with interest has been paid in full or discharged, the Lessor will not accept any surrender of this Lease by the Lessee under Paragraph 35 hereof.

If this lease is terminated at the Lender's request by reason of a default by the Lessee in any of the terms, covenants, provisions or in the payment to the Lender of any installment of principal or interest or in the performance of any other obligation of the Lessee to the Lender, the Lender may sell and assign the shares of the Lessor allocated to the apartment and this Lease, or sublet the apartment, for the account of the Lender to a reputable person of good financial standing subject only to the approval of the then Managing Agent of the Lessor, which approval shall not be unreasonably withheld. If written notice of any such loan has been given to the Lessor by the Lender as aforesaid, the Lender may assign all its rights thereto and to the shares of Lessor allocated to the apartment and this lease by giving written notice to the Lessor by certified or registered mail setting forth the name and address of the assignee, and such assignee and any subsequent assignee or assignees shall thereupon have all the rights of the Lender under this Paragraph 17.

Notwithstanding anything to the contrary contained in the within lease the Lessor will not make or consent to any change or alteration in the terms or conditions of any paragraph of the lease pertaining to the rights of a lender without the consent of the Lender.

18. (a) The Lessee shall keep the interior of the apartment (including interior walls, floors and ceilings, but excluding windows, window panes, window frames, sashes, sills, entrance and terrace doors, frames and saddles) in good repair, shall do all of the painting and decorating required for his apartment, including the interior of window frames, sashes and sills, and shall be solely responsible for the maintenance, repair, and replacement of plumbing, gas and heating fixtures and equipment and such refrigerators, dishwashers, removable and through-the-wall air conditioners, washing machines, ranges and other appliances, as may be in the apartment. Plumbing, gas and heating fixtures as used herein shall include exposed gas, steam and water pipes attached to fixtures, appliances and equipment and the fixtures, appliances and equipment to which they are attached, and any special pipes or equipment which the Lessee may install within the wall or ceiling, or under the floor, but shall not include gas, steam, water or other pipes or conduits within the walls, ceilings or floors or air conditioning or heating equipment which is part of the standard building equipment. The Lessee shall be solely responsible for the maintenance, repair and replacement of all lighting and electrical fixtures, appliances, and equipment, and all meters, fuse boxes or circuit breakers and electrical wiring and conduits from the junction box at the riser into and through the Lessee's apartment. Any ventilator or air conditioning device which shall be visible from the outside of the building shall at all times be painted by the Lessee in a standard color which the Lessor may select for the building.

Repairs by the Lessee

(b) The Lessee shall not permit unreasonable cooking or other odors to escape into the building. The Lessee shall not permit or suffer any unreasonable noises or anything which will interfere with the rights of other lessees or unreasonably annoy them or obstruct the public halls or stairways.

Odors and Noises

(c) If, in the Lessor's sole judgment, any of the Lessee's equipment or appliances shall result in damage to the building or poor quality or interruption of service to other portions of the building, or overloading of, or damage to facilities maintained by the Lessor for the supplying of water, gas, electricity or air conditioning to the building, or if any such appliances visible from the outside of the building shall become rusty or discolored, the Lessee shall promptly, on notice from the Lessor, remedy the condition and, pending such remedy, shall cease using any appliance or equipment which may be creating the objectionable condition.

Equipment and Appliances

(d) The Lessee will comply with all the requirements of the Board of Fire Underwriters, insurance authorities and all governmental authorities and with all laws, ordinances, rules and regulations with respect to the occupancy or use of the apartment. If any mortgage affecting the land or the

Rules and Regulations and Requirements of Mortgage

-111-

building shall contain any provisions pertaining to the right of the Lessee to make changes or alterations in the apartment, or to remove any of the fixtures, appliances, equipment or installations, the Lessee herein shall comply with the requirements of such mortgage or mortgages relating thereto. Upon the Lessee's written request, Lessor will furnish Lessee with copies of applicable provisions of each and every such mortgage.

**Lessor's Right to remedy Lessee's defaults**

19. If the Lessee shall fail for 30 days after notice to make repairs to any part of the apartment, its fixtures or equipment as herein required, or shall fail to remedy a condition which has become objectionable to the Lessor for reasons above set forth, or if the Lessee or any person dwelling in the apartment shall request the Lessor, its agents or servants to perform any act not hereby required to be performed by the Lessor, the Lessor may make such repairs, or arrange for others to do the same, or remove such objectionable condition or equipment, or perform such act, without liability on the Lessor; provided that, if the condition requires prompt action, notice of less than 30 days or, in case of emergency, no notice need be given. In all such cases the Lessor, its agents, servants and contractors shall, as between the Lessor and Lessee, be conclusively deemed to be acting as agents of the Lessee and all contracts therefor made by the Lessor shall be so construed whether or not made in the name of the Lessee. If Lessee shall fail to perform or comply with any of the other covenants or provisions of this lease within the time required by a notice from Lessor (not less than 5 days), then Lessor may, but shall not be obligated, to comply therewith, and for such purpose may enter upon the apartment of Lessee. The Lessor shall be entitled to recover from the Lessee all expenses incurred or for which it has contracted hereunder, such expenses to be payable by the Lessee on demand as additional rent.

**Increase in Rate of Fire Insurance**

20. The Lessee shall not permit or suffer anything to be done or kept in the apartment which will increase the rate of fire insurance on the building or the contents thereof. If, by reason of the occupancy or use of the apartment by the Lessee, the rate of fire insurance on the building or an apartment or the contents of either shall be increased, the Lessee shall (if such occupancy or use continues for more than 30 days after written notice from the Lessor specifying the objectionable occupancy or use) become liable for the additional insurance premiums incurred by Lessor or any lessee or lessees of apartments in the building on all policies so affected, and the Lessor shall have the right to collect the same for its benefit or the benefit of any such lessees as additional rent for the apartment due on the first day of the calendar month following written demand therefor by the Lessor.

**Alterations**

21. (a) The Lessee shall not, without first obtaining the written consent of the Lessor, which consent shall not be unreasonably withheld, make in the

apartment or building, or on any roof, penthouse, terrace or balcony appurtenant thereto, any alteration, enclosure or addition or any alteration of or addition to the water, gas, or steam risers or pipes, heating or air conditioning system or units, electrical conduits, wiring or outlets, plumbing fixtures, intercommunication or alarm system, or any other installation or facility in the apartment or building. The performance by Lessee of any work in the apartment shall be in accordance with any applicable rules and regulations of the Lessor and governmental agencies having jurisdiction thereof. The Lessee shall not in any case install any appliances which will overload the existing wires or equipment in the building.

(b)  Without Lessor's written consent, the Lessee shall not remove any fixtures, appliances, additions or improvements from the apartment except as hereinafter provided. If the Lessee, or a prior lessee, shall have heretofore placed, or the Lessee shall hereafter place in the apartment, at the Lessee's own expense, any additions, improvements, appliances or fixtures, including but not limited to fireplace mantels, lighting fixtures, refrigerators, air conditioners, dishwashers, washing machines, ranges, woodwork, wall paneling, ceilings, special doors or decorations, special cabinet work, special stair railings or other built-in ornamental items, which can be removed without structural alterations or permanent damage to the apartment, then title thereto shall remain in the Lessee and the Lessee shall have the right, prior to the termination of this lease, to remove the same at the Lessee's own expense, provided: (i) that the Lessee at the time of such removal shall not be in default in the payment of rent or in the performance or observance of any other covenants or conditions of this lease; and (ii) that the Lessee shall, at the Lessee's own expense, prior to the termination of this lease, repair all damage to the apartment which shall have been caused by either the installation or removal of any of such additions, improvements, appliances or fixtures; (iii) that if the Lessee shall have removed from the apartment any articles or materials owned by the Lessor or its predecessor in title, or any fixtures or equipment necessary for the use of the apartment, the Lessee shall either restore such articles and materials and fixtures and equipment and repair any damage resulting from their removal and restoration, or replace them with others of a kind and quality customary in comparable buildings and satisfactory to the Lessor; and (iv) that if any mortgagee had acquired a lien on any such property prior to the execution of this lease, Lessor shall first procure from such mortgagee its written consent to such removal.

(c)  On the expiration or termination of this lease, the Lessee shall surrender to the Lessor possession of the apartment with all additions, improvements, appliances and fixtures then included therein, except as hereinabove provided. Any additions, improvements, fixtures or appliances not

Removal of Fixtures

Surrender on Expiration of Term

-113-

removed by the Lessee on or before such expiration or termination of this lease shall, at the option of the Lessor, be deemed abandoned and shall become the property of the Lessor and may be disposed of by the Lessor without liability or accountability to the Lessee.

**Lease Subordinate to Mortgages and Ground Leases**

22. This lease is and shall be subject and subordinate to all present and future ground or underlying leases and to any mortgages now or hereafter liens upon such leases or on the land and building, or buildings, and to any and all extensions, modifications, consolidations, renewals and replacements thereof. This clause shall be self-operative and no further instrument of subordination shall be required by any such mortgagee or ground or underlying lessee. In confirmation of such subordination the Lessee shall at any time, and from time to time, on demand, execute any instruments that may be required by any mortgagee, or by the Lessor, for the purpose of more formally subjecting this lease to the lien of any such mortgage or mortgages or ground or underlying leases, and the duly elected officers, for the time being, of the Lessor are and each of them is hereby irrevocably appointed the attorney-in-fact and agent of the Lessee to execute the same upon such demand, and the Lessee hereby ratifies any such instrument hereafter executed by virtue of the power of attorney hereby given.

In the event that a ground or underlying lease is executed and delivered to the holder of a mortgage or mortgages on such ground or underlying lease or to a nominee or designee of or a corporation formed by or for the benefit of such holder, the Lessee hereunder will attorn to such mortgagee or the nominee or designee of such mortgagee or to any corporation formed by or for the benefit of such mortgagee.

**Mechanic's Lien**

23. In case a notice of mechanic's lien against the building shall be filed purporting to be for labor or material furnished or delivered at the building or the apartment to or for the Lessee, or anyone claiming under the Lessee, the Lessee shall forthwith cause such lien to be discharged by payment, bonding or otherwise; and if the Lessee shall fail to do so within ten days after notice from the Lessor, then the Lessor may cause such lien to be discharged by payment, bonding or otherwise, without investigation as to the validity thereof or of any offsets or defenses thereto, and shall have the right to collect, as additional rent, all amounts so paid and all costs and expenses paid or incurred in connection therewith, including reasonable attorneys' fees and disbursements, together with interest thereon from the time or times of payment.

24. The Lessee shall always in good faith endeavor to observe and promote the cooperative purposes for the accomplishment of which the Lessor is incorporated. **Cooperation**

25. The Lessor and its agents and their authorized workmen shall be permitted to visit, examine, or enter the apartment and any storage space assigned to Lessee at any reasonable hour of the day upon notice, or at any time and without notice in case of emergency, to make or facilitate repairs in any part of the building or to cure any default by the Lessee and to remove such portions of the walls, floors and ceilings of the apartment and storage space as may be required for any such purpose, but the Lessor shall thereafter restore the apartment and storage space to its proper and usual condition at Lessor's expense if such repairs are the obligation of Lessor, or at Lessee's expense if such repairs are the obligation of Lessee or are caused by the act or omission of the Lessee or any of the Lessee's family, guests, agents, employees or subtenants. In order that the Lessor shall at all times have access to the apartment or storage rooms for the purposes provided for in this lease, the Lessee shall provide the lessor with a key to each lock providing access to the apartment or the storage rooms, and if any lock shall be altered or new lock installed, the Lessee shall provide the Lessor with a key thereto immediately upon installation. If the Lessee shall not be personally present to open and permit an entry at any time when an entry therein shall be necessary or permissible hereunder and shall not have furnished a key to Lessor, the Lessor or the Lessor's agents (but, except in an emergency, only when specifically authorized by an officer of the Lessor or an officer of the Managing Agent) may forcibly enter the apartment or storage space without liability for damages by reason thereof (if during such entry the Lessor shall accord reasonable care to the Lessee's property), and without in any manner affecting the obligations and covenants of this lease. The right and authority hereby reserved do not impose, nor does the Lessor assume by reason thereof, any responsibility or liability for the care or supervision of the apartment, or any of the pipes, fixtures, appliances or appurtenances therein contained, except as herein specifically provided. **Right of Entry** / **Key**

26. The failure of the Lessor to insist, in any one or more instances, upon a strict performance of any of the provisions of this lease, or to exercise any right or option herein contained, or to serve any notice, or to institute any action or proceeding, shall not be construed as a waiver, or a relinquishment for the future, of any such provisions, options or rights, but such provision, option or right shall continue and remain in full force and effect. The receipt by the Lessor of rent, with knowledge of the breach of any covenant hereof, shall not be deemed a waiver of such breach, and no waiver by the Lessor of **Waivers**

-115-

any provision hereof shall be deemed to have been made unless in a writing expressly approved by the Directors.

<span style="margin-left:-6em">odices</span>

27. Any notice by or demand from either party to the other shall be duly given only if in writing and sent by registered mail: if by the Lessee, addressed to the Lessor at the building with a copy sent by regular mail to the Lessor's Managing Agent; if to the Lessee, addressed to the building. Either party may by notice served in accordance herewith designate a different address for service of such notice or demand. Notices or demands shall be deemed given on the date when mailed.

**eimbursement 'Lessor's xpenses**

28. If the Lessee shall at any time be in default hereunder and the Lessor shall incur any expense (whether paid or not) in performing acts which the Lessee is required to perform, or in instituting any action or proceeding based on such default, or defending, or asserting a counterclaim in, any action or proceeding brought by the Lessee, the expense thereof to the Lessor, including reasonable attorneys' fees and disbursements, shall be paid by the Lessee to the Lessor, on demand, as additional rent.

**essor's nmenities**

29. (a) The Lessor shall not be liable, except by reason of Lessor's negligence, for any failure or insufficiency of heat, or of air conditioning (where air conditioning is supplied or air conditioning equipment is maintained by the Lessor), water supply, electric current, gas, telephone, or elevator service or other service to be supplied by the Lessor hereunder, or for interference with light, air, view or other interests of the Lessee. No abatement of rent or other compensation or claim of eviction shall be made or allowed because of the making or failure to make or delay in making any repairs, alterations or decorations to the building, or any fixtures or appurtenances therein, or for space taken to comply with any law, ordinance or governmental regulation, or for interruption or curtailment of any service agreed to be furnished by the Lessor, due to accidents, alterations or repairs, or to difficulty or delay in securing supplies or labor or other cause beyond Lessor's control, unless due to Lessor's negligence.

**torage Space nd Laundry**

(b) If the Lessor shall furnish to the Lessee any storage bins or space, the use of the laundry, or any facility outside the apartment, including but not limited to a television antenna, the same shall be deemed to have been furnished gratuitously by the Lessor under a revocable license. The Lessee shall not use such storage space for the storage of valuable or perishable property and any such storage space assigned to Lessee shall be kept by Lessee clean and free of combustibles. If washing machines or other equipment are made available to the Lessee, the Lessee shall use the same on the understanding that such machines or equipment may or may not be in good order and repair and that

-116-

the Lessor is not responsible for such equipment, nor for any damage caused to the property of the Lessee resulting from the Lessee's use thereof, and that any use that Lessee may make of such equipment shall be at his own cost, risk and expense.

(c) The Lessor shall not be responsible for any damage to any automobile or other vehicle left in the care of any employee of the Lessor by the Lessee, and the Lessee hereby agrees to hold the Lessor harmless from any liability arising from any injury to person or property caused by or with such automobile or other vehicle while in the care of such employee. The Lessor shall not be responsible for any property left with or entrusted to any employee of the Lessor, or for the loss of or damage to any property within or without the apartment by theft or otherwise.

*Automobiles and Other Property*

30. The Lessee will not require, permit, suffer or allow the cleaning of any window in the premises from the outside (within the meaning of Section 202 of the New York Labor Law) unless the equipment and safety devices required by law, ordinance, rules and regulations, including, without limitation, Section 202 of the New York Labor Law, are provided and used, and unless the industrial code of the State of New York is fully complied with; and the Lessee hereby agrees to indemnify the Lessor and its employees, other lessees, and the managing agent, for all losses, damages or fines suffered by them as a result of the Lessee's requiring, permitting, suffering or allowing any window in the premises to be cleaned from the outside in violation of the requirements of the aforesaid laws, ordinances, regulations and rules.

*Window Cleaning*

31. If upon, or at any time after, the happening of any of the events mentioned in subdivisions (a) to (l) inclusive of this Paragraph 31, the Lessor shall give to the Lessee a notice stating that the term hereof will expire on a date at least five days thereafter, the term of this lease shall expire on the date so fixed in such notice as fully and completely as if it were the date herein definitely fixed for the expiration of the term, and all right, title and interest of the Lessee hereunder shall thereupon wholly cease and expire, and the Lessee shall thereupon quit and surrender the apartment to the Lessor, it being the intention of the parties hereto to create hereby a conditional limitation, and thereupon the Lessor shall have the right to re-enter the apartment and to remove all persons and personal property therefrom, either by summary dispossess proceedings, or by any suitable action or proceeding at law or in equity, or by force or otherwise, and to repossess the apartment in its former estate as if this lease had not been made, and no liability whatsoever shall attach to the Lessor by reason of the exercise of the right of re-entry, re-possession and removal herein granted and reserved:

*Termination of Lease by Lessor*

-117-

**Lessee Ceasing to Own Accompanying Shares**

(a)  If the Lessee shall cease to be the owner of the shares to which this lease is appurtenant, or if this lease shall pass or be assigned to anyone who is not then the owner of all of said shares;

**Lessee Becoming Bankrupt**

(b)  If at any time during the term of this lease (i) the then holder hereof shall be adjudicated a bankrupt under the laws of the United States; or (ii) a receiver of all of the property of such holder or of this lease shall be appointed under any provision of the laws of the State of New York, or under any statute of the United States, or any statute of any state of the United States and the order appointing such receiver shall not be vacated within thirty days; or (iii) such holder shall make a general assignment for the benefit of creditors; or (iv) any of the shares owned by such holder to which this lease is appurtenant shall be duly levied upon under the process of any court whatever unless such levy shall be discharged within thirty days; or (v) this lease or any of the shares to which it is appurtenant shall pass by operation of law or otherwise to anyone other than the Lessee herein named or a person to whom such Lessee has assigned this lease in the manner herein permitted, but this subsection (v) shall not be applicable if this lease shall devolve upon the executors or administrators of the Lessee and provided that within eight (8) months (which period may be extended by the Directors) after the death said lease and shares shall have been transferred to any assignee in accordance with Paragraph 16 hereof;

**Assignment, Subletting or Unauthorized Occupancy**

(c)  If there be an assignment of this lease, or any subletting hereunder, without full compliance with the requirements of Paragraphs 15 or 16 hereof; or if any person not authorized by Paragraph 14 shall be permitted to use or occupy the apartment, and the Lessee shall fail to cause such unauthorized person to vacate the apartment within ten days after written notice from the Lessor;

**Default in Rent**

(d)  If the Lessee shall be in default for a period of one month in the payment of any rent or additional rent or of any installment thereof and shall fail to cure such default within ten days after written notice from the Lessor;

**Default in Other Covenants**

(e)  If the Lessee shall be in default in the performance of any covenant or provision hereof, other than the covenant to pay rent, and such default shall continue for thirty days after written notice from the Lessor;

**Objectionable Conduct**

(f)  If at any time the Lessor shall determine, upon the affirmative vote of two-thirds of its then Board of Directors, at a meeting duly called for that purpose, that because of objectionable conduct on the part of the Lessee, or of a person dwelling or visiting in the apartment, repeated after written notice from Lessor, the tenancy of the Lessee is undesirable;

(g) If the purchase by the Lessee of the shares accompanying this proprietary lease was financed, and an Event of Default shall occur pursuant to the terms of the Agreement entered into between the Lessee and the Lender and notice of said event of Default shall be given to the Lessor.

(h) If at any time the Lessor shall determine, upon the affirmative vote of two-thirds of its then Board of Directors at a meeting of such directors duly called for that purpose, and the affirmative vote of the record holders of at least 75% in amount of its then issued shares, at a shareholders' meeting duly called for that purpose, to terminate all proprietary leases;

Termination of a Proprietary Leas

(i) If the building shall be destroyed or damaged and the shareholders shall decide not to repair or rebuild as provided in Paragraph 4;

Destruction of Building

(j) If at any time the building or a substantial portion thereof shall be taken by condemnation proceedings.

Condemnation

32. (a) In the event the Lessor resumes possession of the apartment, either by summary proceedings, action of ejectment or otherwise, because of default by the Lessee in the payment of any rent or additional rent due hereunder, or on the expiration of the term pursuant to a notice given as provided in Paragraph 31 hereof upon the happening of any event specified in subsections (a) to (g) inclusive of Paragraph 31, Lessee shall continue to remain liable for payment of a sum equal to the rent which would have become due hereunder and shall pay the same in installments at the time such rent would be due hereunder. No suit brought to recover any installment of such rent or additional rent shall prejudice the right of the Lessor to recover any subsequent installment. After resuming possession, the Lessor may, at its option, from time to time (i) relet the apartment for its own account, or (ii) relet the apartment as the agent of the Lessee, in the name of the Lessee or in its own name, for a term or terms which may be less than or greater than the period which would otherwise have constituted the balance of the term of this lease, and may grant concessions or free rent, in its discretion. Any reletting of the apartment shall be deemed for the account of the Lessee, unless within ten days after such reletting the Lessor shall notify the Lessee that the premises have been relet for the Lessor's own account. The fact that the Lessor may have relet the apartment as agent for the Lessee shall not prevent the Lessor from thereafter notifying the Lessee that it proposes to relet the apartment for its own account. If the Lessor relets the apartment as agent for the Lessee, it shall, after reimbursing itself for its expenses in connection therewith, including leasing commissions and a reasonable amount for attorneys' fees and expenses, and decorations, alterations and repairs in and to the apartment, apply the remaining avails of such reletting against the Lessee's continuing obligations

Lessor's Rights After Lessee's Default

hereunder. There shall be a final accounting between the Lessor and the Lessee upon the earliest of the four following dates: (A) the date of expiration of the term of this lease as stated on page 1 hereof; (B) the date as of which a new proprietary lease covering the apartment shall have become effective; (C) the date the Lessor gives written notice to the Lessee that it has relet the apartment for its own account; (D) the date upon which all proprietary leases of the Lessor terminate. From and after the date upon which the Lessor becomes obligated to account to the Lessee, as above provided, the Lessor shall have no further duty to account to the Lessee for any avails of reletting and the Lessee shall have no further liability for sums thereafter accruing hereunder, but such termination of the Lessee's liability shall not affect any liabilities theretofore accrued.

**Collection of Rent from Subtenants**

(b)  If the Lessee shall at any time sublet the apartment and shall default in the payment of any rent or additional rent, the Lessor may, at its option, so long as such default shall continue, demand and receive from the subtenant the rent due or becoming due from such subtenant to the Lessee, and apply the amount to pay sums due and to become due from the Lessee to the Lessor. Any payment by a subtenant to the Lessor shall constitute a discharge of the obligation of such subtenant to the Lessee, to the extent of the amount so paid. The acceptance of rent from any subtenant shall not be deemed a consent to or approval of any subletting or assignment by the Lessee, or a release or discharge of any of the obligations of the Lessee hereunder.

**Sale of Shares**

(c)  Upon the termination of this lease under the provisions of subdivisions (a) to (g) inclusive of Paragraph 31, the Lessee shall surrender to the corporation the certificate for the shares of the corporation owned by the Lessee to which this lease is appurtenant. Whether or not said certificate is surrendered, the Lessor may issue a new proprietary lease for the apartment and issue a new certificate for the shares of the Lessor owned by the Lessee and allocated to the apartment when a purchaser therefor is obtained, provided that the issuance of such shares and such lease to such purchaser is authorized by a resolution of the Directors, or by a writing signed by a majority of the Directors or by lessees owning, of record, at least a majority of the shares of the Lessor accompanying proprietary leases then in force. Upon such issuance the certificate owned or held by the Lessee shall be automatically cancelled and rendered null and void. The Lessor shall apply the proceeds received for the issuance of such shares towards the payment of the Lessee's indebtedness hereunder, including interest, attorneys' fees and other expenses incurred by the Lessor, and, if the proceeds are sufficient to pay the same, the Lessor shall pay over any surplus to the Lessee, but, if insufficient, the Lessee shall remain liable for the balance of the indebtedness. Upon the issuance of any such new proprietary lease and certificate, the Lessee's liability hereunder shall cease and

the Lessee shall only be liable for rent and expenses accrued to that time. The Lessor shall not, however, be obligated to sell such shares and appurtenant lease or otherwise make any attempt to mitigate damages.

33. The Lessee hereby expressly waives any and all right of redemption in case the Lessee shall be disposed by judgment or warrant of any court or judge. The words "enter", "re-enter" and "re-entry" as used in this lease are not restricted to their technical legal meaning.

34. Upon the termination of this lease under the provisions of subdivisions (a) to (g) inclusive of Paragraph 31, the Lessee shall remain liable as provided in Paragraph 32 of this lease. Upon the termination of this lease under any other of its provisions, the Lessee shall be and remain liable to pay all rent, additional rent and other charges due or accrued and to perform all covenants and agreements of the Lessee up to the date of such termination. On or before any such termination the Lessee shall vacate the apartment and surrender possession thereof to the Lessor or its assigns, and upon demand of the Lessor or its assigns, shall execute, acknowledge and deliver to the Lessor or its assigns any instrument which may reasonably be required to evidence the surrendering of all estate and interest of the Lessee in the apartment, or in the building of which it is a part.

35. (a) This lease may be cancelled by the Lessee on any September 30th after the third anniversary of the consummation of the Offering Statement-Plan of Cooperative Organization pursuant to which proprietary leases were originally issued, upon complying with all the provisions hereinafter set forth. Irrevocable written notice of intention to cancel must be given by the Lessee to the Lessor on or before April 1 in the calendar year in which such cancellation is to occur. At the time of the giving of such notice of intention to cancel there must be deposited with the Lessor by the Lessee:

(i) the Lessee's counterpart of this lease with a written assignment in form required by the Lessor, in blank, effective as of August 31 of the year of cancellation, free from all subleases, tenancies, liens, encumbrances and other charges whatsoever;

(ii) the Lessee's certificate for his shares of the Lessor, endorsed in blank for transfer and with all necessary transfer tax stamps affixed and with payment of any transfer taxes due thereon;

(iii) a written statement setting forth in detail those additions, improvements, fixtures or equipment which the Lessee has, under the terms of this lease, the right to and intends to remove.

–121–

If the purchase of the shares accompanying this proprietary lease was financed, and the Lessee elects to avail himself of the right to terminate and cancel the proprietary lease, as more particularly provided for herein, then the Lessor shall give notice thereof to the Lender and, if requested by the Lender, shall issue a new certificate of stock and proprietary lease in the name of a reputable financially responsible individual or individuals resident in the State of New York designated by the Lender and approved by the Lessor, and such individual or individuals shall have all of the rights provided for in this lease. Further, Lessor agrees to reject a surrender of this Proprietary Lease unless it is accompanied by the written consent of the Lender.

**Removal of Fixtures**

(b)  All additions, improvements, appliances and fixtures which are removable under the terms of this lease and which are enumerated in the statement made as provided in subdivision (iii) above shall be removed by the Lessee prior to August 31st of the year of cancellation, and on or before said

**Possession**

August 31st the Lessee shall deliver possession of the apartment to the Lessor in good condition with all required equipment, fixtures and appliances installed and in proper operating condition and free from all subleases and tenancies, liens, encumbrances and other charges and pay to the Lessor all rent, additional rent and other charges which shall be payble under this lease up to and including the following September 30th.

**Permission to Show and Occupy Premises**

(c)  The Lessor and its agents may show the apartment to prospective lessees, contractors and architects at reasonable times after notice of the Lessee's intention to cancel. After August 31st or the earlier vacating of the apartment, the Lessor and its agents, employees and lessees may enter the apartment, occupy the same and make such alterations and additions therein as the Lessor may deem necessary or desirable without diminution or abatement of the rent due hereunder.

**Effective Date of Cancellation**

(d)  If the Lessee is not otherwise in default hereunder and if the Lessee shall have timely complied with all of the provisions of subdivisions (a) and (b) hereof, then this lease shall be cancelled and all rights, duties and obligations of the parties hereunder shall cease as of the September 30th fixed in said notice, and the shares of Lessor shall become the absolute property of the Lessor, provided, however, that the Lessee shall not be released from any indebtedness owing to the Lessor on said last mentioned date.

**Rights on Lessee's Default**

(e)  If the Lessee shall give the notice but fail to comply with any of the other provisions of this paragraph, the Lessor shall have the option at any time prior to September 30th (i) of returning to the Lessee this lease, the certificate for shares and other documents deposited, and thereupon the Lessee shall be deemed to have withdrawn the notice of intention to cancel this lease,

or (ii) of treating this lease as cancelled as of the September 30th named in the notice of intention to cancel as the date for the cancellation of such lease, and bringing such proceedings and actions as it may deem best to enforce the covenants of the Lessee hereinabove contained and to collect from the Lessee the payments which the Lessee is required to make hereunder, together with reasonable attorneys' fees and expenses.

(f)  If the Lessee named herein is one of the individuals comprising the Sponsor-Seller or an individual secured by Sponsor-Seller to acquire this lease and the shares of the apartment allocated thereto. then Lessee may not exercise the option to cancel this lease prior to the expiration of five years following the commencement of the term hereof  and unless both of the following conditions are complied with:  (i) shares of Lessor allocated to not less than 85% of the apartments in the building have been acquired by purchasers for occupancy and (ii) Lessee deposits with Lessor either an amount in cash equal to two years' maintenance charges at the rate then payable under this lease or an irrevocable bank letter of credit in said amount.

36. (a)  If on April 1st in any year the total number of shares owned by lessees holding proprietary leases, who have given notice pursuant to Paragraph 35 of intention to cancel such proprietary leases on September 30th of said year, shall aggregate ten percent (10%) or more of the Lessor's outstanding shares, exclusive of treasury shares, then the Lessor shall, prior to April 10th in such year, give a written notice to the holders of all issued shares of the Lessor, stating the total number of shares then outstanding and in its treasury and the total number of shares owned by lessees holding proprietary leases who have given notice of intention to cancel. In such case the proprietary lessees to whom such notice shall have been given shall have the right to cancel their leases in compliance with the provisions of Paragraph 35 hereof, provided only that written notice of the intention to cancel such leases shall be given on or before July 1st instead of April 1st.

(b)  If lessees owning at least 80% of the then issued and outstanding shares of the Lessor shall exercise the option to cancel their leases in one year, then this lease and all other proprietary leases shall thereupon terminate on the September 30th of the year in which such options shall have been exercised, as though every lessee had exercised such option. In such event none of the lessees shall be required to surrender his shares to the Lessor and all certificates for shares delivered to the Lessor by those who had, during that year, served notice of intention to cancel their leases under the provisions hereof, shall be returned to such lessees.

37. No later than thirty days after the termination of all proprietary leases, whether by expiration of their terms or otherwise, a special meeting of shareholders of the Lessor shall take place to determine whether (a) to continue to operate the building as a residential apartment building, (b) to alter, demolish or rebuild the building or any part thereof, or (c) to sell the building and liquidate the assets of the Lessor, and the Directors shall carry out the determination made at said meeting of shareholders of the Lessor, and all of the holders of the then issued and outstanding shares of the Lessor shall have such rights as enure to shareholders of corporations having title to real estate.

38. As a privilege of the original issuance and sale of the Lessor's shares, a lessee who is an original purchaser (but not his successors or assigns) may

-123-

*[Right margin notes:]*

Extension of Option to Canc

Right of Lessee to Cancel

Continuance o Cooperative Management o Building After All Leases Terminated

Assignment and Sublettin with Managin Agent's Conse

assign this lease and sublet the apartment without the consent of the Directors or shareholders as provided in paragraphs 15 and 16 but with the consent only of the Lessor's then Managing Agent which may not be unreasonably withheld. If the then Managing Agent refuses to consent for any reason whatsoever, such Lessee may apply for consent to the Directors or to the shareholders as provided in paragraphs 15 and 16 hereof.

**Foreclosure Receiver of Rents**

39.  Notwithstanding anything contained in this lease, if any action shall be instituted to foreclose any mortgage on the land or the building or the leasehold of the land or building, the Lessee shall, on demand, pay to the receiver of the rents appointed in such action rent, if any, owing hereunder on the date of such appointment and shall pay thereafter to such receiver in advance, on the first day of each month during the pendency of such action, as rent hereunder, the rent for the apartment as last determined and established by the Directors prior to the commencement of said action, and such rent shall be paid during the period of such receivership, whether or not the Directors shall have determined and established the rent payable hereunder for any part of the period during which such receivership may continue. The provisions of this Paragraph are intended for the benefit of present and future mortgagees of the land or the building or the leasehold of the land and may not be modified or annulled without the prior written consent of any such mortgage holder.

**To Whom Covenants Apply**

40.  The references herein to the Lessor shall be deemed to include its successors and assigns, and the references herein to the Lessee or to a shareholder of the Lessor shall be deemed to include the executors, administrators, legal representatives, legatees, distributees and assigns of the Lessee or of such shareholder; and the covenants herein contained shall apply to, bind and enure to the benefit of the Lessor and its successors and assigns, and the Lessee and the executors and administrators, legal representatives, legatees, distributees and assigns of the Lessee, except as hereinabove stated.

**Waiver of Trial by Jury**

41.  To the extent permitted by law, the respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other on any matters whatsoever arising out of or in any way connected with this lease, the Lessee's use or occupancy of the apartment, or any claim of damage resulting from any act or omission of the parties in any way connected with this lease or the apartment.

**Lessor's Additional Remedies**

42.  In the event of a breach or threatened breach by Lessee of any provision hereof, the Lessor shall have the right of injunction and the right to invoke any remedy at law or in equity, as if re-entry, summary proceedings

and other remedies were not herein provided for, and the election of one or more remedies shall not preclude the Lessor from any other remedy.

43. If more than one person is named as Lessee hereunder, the Lessor may require the signatures of all such persons in connection with any notice to be given or action to be taken by the Lessee hereunder, including, without limiting the generality of the foregoing, the surrender or assignment of this lease, or any request for consent to assignment or subletting. Each person named as Lessee shall be jointly and severally liable for all of the Lessee's obligations hereunder. Any notice by the Lessor to any person named as Lessee shall be sufficient, and shall have the same force and effect, as though given to all persons named as Lessee.

Lessee More Than One Person

44. If any clause or provision herein contained shall be adjudged invalid, the same shall not affect the validity of any other clause or provision of this lease, or constitute any cause of action in favor of either party as against the other.

Effect of Partial Invalidity

45. The marginal headings of the several paragraphs of this lease shall not be deemed a part of this lease.

Marginal Headings

46. The provisions of this lease cannot be changed orally.

Changes to Be In Writing

IN WITNESS WHEREOF, the parties have executed this lease.

310 WEST 56th STREET CORPORATION

Lessor.

By ———————————
President
Secretary


——————————— (L.S.)


——————————— (L.S.)
Lessee.

-125-

State of New York }

}  ss.:

County of }

On the          day of          , in the year 19  , before me personally appeared                              , to me known, who being by me duly sworn, did depose and say that he resides at                                        , that he is the          of 310 West 56th Street Corporation the corporation described in and which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation, and that he signed h    name thereto by like order.

_____

State of New York }

}  ss.:

County of }

On the          day of          , in the year 19  , before me personally appeared                              , to me personally known and known to me to be the individual   described in and who executed the foregoing instrument, and duly acknowledged to me that he   executed the same.

_____

STATE OF NEW YORK )

)  ss.:

COUNTY OF NEW YORK )

On the          day of          , 197  , before me came                    , the subscribing witness to the foregoing instrument, to me personally known, who, being by me duly sworn, did depose and say that he resides at City of New York, that he knows                    to be the individual who executed the foregoing instrument; that he, said subscribing witness, was present and saw h    execute the same; and that he, said                    , thereupon at the same time subscribed h    name as witness thereto.

_____

Notary Public

-126-

# HOUSE RULES

(1)  The public halls and stairways of the building shall not be obstructed or used for any purpose other than ingress to and egress from the apartments in the building, and the fire towers shall not be obstructed in any way.

(2)  No patient of any doctor who has offices in the building shall be permitted to wait in the lobby.

(3)  Children shall not play in the public halls, courts, stairways, fire towers or elevators and shall not be permitted on the roof.

(4)  No public hall above the ground floor of the building shall be decorated or furnished by any Lessee in any manner without the prior consent of all of the Lessees to whose apartments such hall serves as a means of ingress and egress; in the event of disagreement among such Lessees, the Board of Directors shall decide.

(5)  No Lessee shall make or permit any disturbing noises in the building or do or permit anything to be done therein which will interfere with the rights, comfort or convenience of other Lessees. No Lessee shall play upon or suffer to be played upon any musical instrument or permit to be operated a phonograph or a radio or television loud speaker in such Lessee's apartment between the hours of eleven o'clock p.m. and the following eight o'clock a.m. if the same shall disturb or annoy other occupants of the building. No construction or repair work or other installation involving noise shall be conducted in any apartment except on weekdays (not including legal holidays) and only between the hours of 8:30 a.m. and 5:00 p.m.

(6)  No article shall be placed in the halls or on the staircase landings or fire towers, nor shall anything be hung or shaken from the doors, windows, terraces or balconies or placed upon the window sills of the building.

(7)  No awnings, window air-conditioning units or ventilators shall be used in or about the building except such as shall have been expressly approved by the Lessor or the managing agent, nor shall anything be projected out of any window of the building without similar approval.

(8)  No sign, notice, advertisement or illumination shall be inscribed or exposed on or at any window or other part of the building, except such as shall have been approved in writing by the Lessor or the managing agent.

(9)  No velocipedes, bicycles, scooters or similar vehicles shall be allowed in a passenger elevator and baby carriages and the above-mentioned vehicles shall not be allowed to stand in the public halls, passageways, areas or courts of the building.

(10)  Messengers and tradespeople shall use such means of ingress and egress as shall be designated by the Lessor.

(11)  Kitchen supplies, market goods and packages of every kind are to be delivered only at the service entrance of the building and through the service elevator to the apartments when such elevator is in operation.

(12)  Trunks and heavy baggage shall be taken in or out of the building through the service entrance.

(13)  Garbage and refuse from the apartments shall be disposed of only at such times and in such manner as the superintendent or the managing agent of the building may direct.

(14)  Water closets and other water apparatus in the building shall not be used for any purposes other than those for which they were constructed, nor shall any sweepings, rubbish, rags or any other article be thrown into the water closets. The cost of repairing any damage resulting from misuse of any water closets or other apparatus shall be paid for by the Lessee in whose apartment it shall have been caused.

(15)  No Lessee shall send any employee of the Lessor out of the building on any private business of a Lessee.

(16)  No bird or animal shall be kept or harbored in the building unless the same in each instance be expressly permitted in writing by the Lessor; such permission shall be revocable by the Lessor. In no event shall dogs be permitted on elevators or in any of the public portions of the building unless carried or on leash. No pigeons or other birds or animals shall be fed from the window sills, terraces, balconies or in the yard, court spaces or other public portions of the building, or on the sidewalk or street adjacent to the building.

(17)  No radio or television aerial shall be attached to or hung from the exterior of the building without the prior written approval of the Lessor or the managing agent.

(18)  No vehicle belonging to a Lessee or to a member of the family or guest, subtenant or employee of a Lessee shall be parked in such manner as

to impede or prevent ready access to any entrance of the building by another vehicle.

(19) The Lessee shall use the available laundry facilities only upon such days and during such hours as may be designated by the Lessor or the managing agent.

(20) The Lessor shall have the right from time to time to curtail or relocate any space devoted to storage or laundry purposes.

(21) Unless expressly authorized by the Board of Directors in each case, the floors of each apartment must be covered with rugs or carpeting or equally effective noise-reducing material, to the extent of at least 80% of the floor area of each room excepting only kitchens, pantries, bathrooms, maid's rooms, closets, and foyer.

(22) No group tour or exhibition of any apartment or its contents shall be conducted, nor shall any auction sale be held in any apartment without the consent of the Lessor or its managing agent.

(23) The Lessee shall keep the windows of the apartment clean. In case of refusal or neglect of the Lessee during 10 days after notice in writing from the Lessor or the managing agent to clean the windows, such cleaning may be done by the Lessor, which shall have the right, by its officers or authorized agents, to enter the apartment for the purpose and to charge the cost of such cleaning to the Lessee.

(24) The passenger and service elevators, unless of automatic type and intended for operation by a passenger, shall be operated only by employees of the Lessor, and there shall be no interference whatever with the same by Lessees or members of their families or their guests, employees or subtenants.

(25) Complaints regarding the service of the building shall be made in writing to the managing agent of the Lessor.

(26) Any consent or approval given under these House Rules by the Lessor shall be revocable at any time.

(27) If there be a garage in the building, the Lessee will abide by all arrangements made by the Lessor with the garage operator with regard to the garage and the driveways thereto.

(28)  The following rules shall be observed with respect to incinerator equipment:

(i)  All wet debris is to be securely wrapped or bagged in small package size to fit easily into the hopper panel.

(ii)  Debris should be completely drip-free before it leaves the apartment and carried to the incinerator closet in a careful manner and in a drip-proof container; then placed into the flue hopper so it will drop into the flue for disposal.

(iii)  No bottles or cans shall be dropped down the flue before 10:00 a.m. or after 5:00 p.m., but shall be left in a neat manner in service elevator area, if such items must be disposed of before 10:00 a.m. or after 5:00 p.m.

(iv)  Cartons, boxes, crates, sticks of wood or other solid matter shall not be stuffed into hopper opening. Small items of this nature may be left in a neat manner on the incinerator closet floor. Bulky items should be left at service elevator area between 10:00 a.m. and 6:00 p.m. and service employee summoned to dispose of them by way of the service elevator.

(v)  Under no circumstances should carpet sweepings containing naphthalene, camphor balls or flakes, floor scrapings, plastic wrappings or covers, oil soaked rags, empty paint or aerosol cans or any other inflammable, explosive, highly combustible substances or lighted cigarettes or cigar stubs be thrown into the incinerator flue.

(vi)  Vacuum cleaner bags must never be emptied into the flue. Such dust, dirt, etc. should be wrapped in a securely tied bag or package and then be placed through hopper door panel into flue.

(vii)  The superintendent shall be notified of any drippings, or moist refuse, appearing on incinerator closet floor and corridors.

(29)  No Lessee shall install any plantings on the terrace, balcony or roof without the prior written approval of the Lessor. Plantings shall be contained in boxes of wood lined with metal or other material impervious to dampness and standing on supports at least two inches from the terrace, balcony or roof surface, and if adjoining a wall, at least three inches from such wall. Suitable weep holes shall be provided in the boxes to draw off water. In special locations, such as a corner abutting a parapet wall, plantings may be contained in masonry or hollow tile walls which shall be at least three inches from the parapet and

-130-

flashing, with the floor of drainage tiles and suitable weep holes at the sides to draw off water. It shall be the responsibility of the Lessee to maintain the containers in good condition, and the drainage tiles and weep holes in operating condition.

(30)  The agents of the Lessor, and any contractor or workman authorized by the Lessor, may enter any apartment at any reasonable hour of the day for the purpose of inspecting such apartment to ascertain whether measures are necessary or desirable to control or exterminate any vermin, insects or other pests and for the purpose of taking such measures as may be necessary to control or exterminate any such vermin, insects or other pests. If the Lessor takes measures to control or exterminate carpet beetles, the cost thereof shall be payable by the Lessee, as additional rent.

(31)  These House Rules may be added to, amended or repealed at any time by resolution of the Board of Directors of the Lessor.